## Watson *versus* Muirhead.

1. The rule of liability of conveyancers for errors of judgment is the same as lawyers and physicians.

2. A conveyancer employed (before the decision in Sellers *v.* Burk, 11 Wright 344) in the purchase of a ground-rent, relying on the opinion of legal counsel, that it was clear of encumbrances, so represented it to his principal, there being at the time a judgment by default against the vendor, the damages on which had not been liquidated, and under which it was afterwards sold by the sheriff. *Held*, that the conveyancer was not liable to the purchaser for negligence.

3. To pass the title at that time with such an encumbrance, was not evidence of want of ordinary knowledge and skill and due caution, even if the conveyancer had passed it on his own judgment.

February 6th 1868.    Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ.    READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 90, to July Term 1867.

This was an action on the case by Mark Watson against Charles H. Muirhead, commenced November 30th 1865.

The declaration contained four counts, laying substantially the same cause of action, to wit, that the plaintiff having agreed to buy a ground-rent in Philadelphia, retained and employed the defendant as a conveyancer to ascertain the title of the vendor and whether it was free from encumbrances; that it became the duty of the defendant, by reason of such employment, to ascertain whether the ground-rent was clear of encumbrances, and to have it conveyed to the plaintiff clear of all encumbrances, yet the defendant procured the plaintiff to pay to the vendor of the ground-rent $1400, the purchase-money thereof; that there was at the time a lien upon it, under which it was sold by the sheriff, and the plaintiff lost the whole ground-rent.

The evidence was, that about the middle of 1859, the defendant informed Mr. Cavender, the agent of the plaintiff, that Mr. Macalaster would soon have some ground-rents for sale, and said to Mr. Cavender that if "his country customers wanted any they could have an opportunity."

On the 27th of January 1860, the defendant told Mr. Cavender that the ground-rents were then ready for sale, and that the money would be wanted on the 2d of February. Cavender, who was a witness for the plaintiff, testified that he said to the defendant "the time was too short. He said if I would trust him to do the conveyancing, he would have all the papers prepared in time. I told him it was not sufficient time to make an examination of the title and get out searches—only three working days. I told him so. He said, 'You know Charles Henry Fisher's

7 P. F. SMITH—11

[Watson *v.* Muirhead.]

title; you have examined that. There are but three links: the deed of Charles Henry Fisher to the Merchants' Insurance Company; from the Merchants' Insurance Company to the Exchange Insurance Company, and from the Exchange Insurance Company to Charles Macalester. I have continued the brief to include these three links. Here it is, with Harry Wharton's opinion on it.' He said: 'I had made the searches, procured certificates to show the title clear of encumbrance, but I have loaned them to Mr. Livensetter, who is drawing other deeds. As soon as he is through examining them, I will hand them over to you, with the old title-papers.' I consented. I called on the morning of the 2d * * the deeds were not prepared for execution. * * He said if I would give him a check 'I can settle all your business satisfactorily.'" Cavender accordingly gave defendant a check for $6231, the purchase-money of five ground-rents, including that in question. He afterwards received the deed to the plaintiff for the ground-rent and the searches, which he did not then examine. Some time afterwards, the defendant sent his clerk to inform Cavender that the ground-rent was advertised for sale by the sheriff, and he informed Cavender that there was an interlocutory judgment which Mr. Wharton said did not bind the ground-rent. Cavender then examined the searches which he had not seen before, and found a judgment certified. Cavender informed the defendant of this; he replied that Mr. Wharton said it amounted to nothing, it was not an encumbrance. Cavender replied that Mr. Wharton did not say so; he said there was no judgment.

Plaintiff also gave evidence, by a number of conveyancers, that when conveyancers act both for buyer and seller it is their duty to the buyer to see that the title is clear of encumbrances.

He also gave in evidence a written opinion of Henry Wharton, Esq., dated June 28th 1859, in which he says: "I have considered and examined the brief of title and the deeds and other documents produced relative to the title of Charles Macalester to seven yearly ground-rents, of $84 each, issuing out of as many lots of ground, &c., conveyed to him by the Exchange Insurance Company, by deed dated June 25th ·1859, and I am of opinion that a good and sufficient title is thereby deduced to him in fee. * * *

"The certificates of search produced, as against the several holders of the rents since the conveyance by Mr. Charles Henry Fisher to the Merchants' Insurance Company, show that the premises are clear of encumbrance, so far as the searches extend, except a judgment of J. S. De Wolf and others against Merchants' Insurance Company, which is to be paid off and satisfied out of the proceeds of sale."

Also the certificate of liens in the District Court, referred to in the opinion, viz.: "Charles Howland, J. 58, 1498, March 30th

[Watson v. Muirhead.]

1858. John S. De Wolf, J. 58, 1682, December 16th 1858, $6511.01."

Also, the appearance-docket of that court, showing a judgment at the suit of Howland against the Merchants' Insurance Company for want of a plea, which was opened and, December 10th 1860, judgment entered on a verdict. Also, record of sale of this ground-rent, November 11th 1861, under a venditioni on that judgment.

The plaintiff having closed, the defendant called Henry Wharton, who testified :—

" I had a judgment against the Merchants' Insurance Company, which appears on these searches, for $6511 with interest, amounting to nearly $7000. I was about to levy on these ground-rents, when either some member of the company, or Mr. Muirhead on behalf of them, came to me and said that they were very desirous of preventing a sacrifice of these ground-rents, and therefore they would prefer to have them sold, and they would pay the amount of the judgments. I agreed to that. Some time subsequently, Mr. Muirhead stated he had procured a purchaser, but desired me to examine the title and to look at the searches, which I agreed to do. These searches were then produced to me—that was some time in April or May 1859—showing two judgments ; one judgment which I held myself, and another in favor of Charles W. Howland. On that appearing, I requested Mr. Muirhead to furnish me with copies of the docket-entries of that judgment, and to make any further examination which might be necessary. He furnished me with the docket-entries of the judgment, and also the papers in the case. It appeared to be an action on a policy of insurance in which judgment was taken for want of a plea. That judgment was subsequently opened, the order being made on payment of costs. It also appeared that a writ of inquiry had been taken out. I directed Mr. Muirhead to examine the sheriff's office and the prothonotary's office, to discover whether it had ever been executed. He informed me that it had not been executed. I directed that the costs that appeared in the case, and on the payment of which the order to open the judgment was passed, should be paid. Under those circumstances I had no doubt that that judgment was not a lien. For that reason I gave my opinion, as it appears here, that the property was clear of encumbrances other than the judgment which I myself held. After that the matter was placed in Mr. Porter's hands, as counsel for Mr. Macalester ; and I had no further knowledge of the subject until very recently."

Also, William A. Porter, who testified : " Mr. Macalester called upon me and said he was about to buy these ground-rents, and wished me to examine the title. I procured the brief either from him or from Mr. Muirhead, and examined it. I had also occasion to

[Watson *v.* Muirhead.]

examine some papers upon the record referred to in the brief, but I cannot tell what they were. I don't remember now. I think I was four days employed in it. On the fourth or fifth day I told him he might safely buy these ground-rents, that the title was good. I have no recollection of seeing the searches; but upon inquiring upon that point, it was said that the searches had been submitted, I think it was to Mr. Wharton, and then or about that time the fact was stated that there was a judgment on the searches, to which no amount had been fixed. And so I gave it as my opinion that that judgment need not stand in the way of the purchase. I cannot say that this was before the purchase was actually made. On learning that the searches had been submitted to Mr. Wharton, I felt no more concern or uneasiness about it; but I do remember that about that time this fact was called to my attention."

The plaintiff submitted these points :—

1. If the jury believe from the evidence that the defendant as a conveyancer undertook to prepare the deed for the ground-rent to the plaintiff, and to ascertain if there were any encumbrances thereon, and that he received the money for said ground-rent, and neglected to apply it to the payment of the judgment under which the ground-rent was subsequently sold, he will be liable in this action for any damages sustained by reason of such neglect.

2. If the jury believe from the evidence that the defendant as a conveyancer undertook to have the papers prepared for the conveyance of the title to the ground-rent to the plaintiff, and that he received the purchase-money of said ground-rent from the plaintiff or his agent, that it then became his duty to see that the property was clear of encumbrances, and to appropriate so much of the money in his hands as was necessary in the discharge of such encumbrances, and that if he paid the money over to the vendor of said ground-rent without obtaining a discharge of the encumbrances thereon, and by reason thereof the plaintiff has sustained any damage, the defendant will be liable in this action for the damage which the plaintiff has sustained.

3. If the defendant undertook as a conveyancer to prepare the deed for the conveyance of said ground-rent to the plaintiff, and received from the plaintiff or his agent the purchase-money of said ground-rent, and at or immediately before the time of the receipt of the money knew of the existence of the judgment against the Merchants' Insurance Company of Philadelphia, but notwithstanding asserted and induced the plaintiff or his agent to believe that there was no judgment against the property, he will be liable for any damages which the plaintiff has sustained by reason of the existence of such judgment.

4. That if the defendant knew of the existence of the judgment against the Merchants' Insurance Company of Philadelphia, he was bound to inform the plaintiff or his agent of the fact that there

[Watson v. Muirhead.]

was such a judgment, although he may have believed that it was not a lien on the ground-rent, and if the jury find from the evidence that he neglected to give such notice, he will be liable for all the consequences of his neglect in that respect, and if, by reason of proceedings upon such judgment the plaintiff has been deprived of the ground-rent, he is entitled to recover the value thereof with interest thereon from the time he was deprived of it, from the plaintiff.

The court (Hare, A. J.) charged:— * * "If there was in this case any want of good faith on the part of the defendant, if he concealed or misrepresented any material fact, you will have no difficulty in finding a verdict for the whole amount for the plaintiff, because the position of the defendant was one emphatically requiring honesty and fair dealing. If, however, you are of opinion that there was no fraud or want of fairness on his part, the inquiry will then be, was he employed as a conveyancer by the plaintiff? Was he guilty of negligence in the course of that employment?

"It cannot be said that there is no evidence from which the jury can find that the defendant was acting as the plaintiff's agent. At the same time the evidence is equally if not more consistent with the idea that what passed between the defendant and Mr. Cavender was not an agreement to examine the title for the plaintiff, but an assurance that it did not need examination, that it had been already investigated, and that the plaintiff might safely rely on the result. If this be so, there is no responsibility on the part of the defendant, because a man who expresses an opinion as such is only responsible for expressing it fairly. He is not responsible for its absolute correctness. It is proper to add in this connection that, according to the testimony given by Mr. Cavender, the defendant did not take out, and was not paid for taking out searches against any one. That the only compensation he received was for drawing the deed, and that he was told that it was not necessary to have searches made against Mr. Macalester. These considerations will not exonerate the defendant if he was acting as agent for the plaintiff, but they may have a material bearing on the inquiry whether he was the plaintiff's agent.

"If the jury find that the defendant was acting for the plaintiff, the remaining question will be whether he was guilty of negligence in the course of the agency. A conveyancer does not guaranty the titles which he passes—such a liability would not readily be assumed for such a reward as the evidence in this case shows is ordinarily paid to conveyancers for examining titles. What he does undertake is to use due care according to the light which he has, and to have such a reasonable amount of light as a man in his walk of life ought to bring to the discharge of his

professional duties. If walking by that light and with a proper degree of care he makes a slip, it is not negligence. But if from want of proper knowledge, from a failure to use proper means, or from carelessness in applying those means to the matter in hand, loss results to his client, the fault is his, and he will be responsible.

" In this case it is for the jury to say to which of these categories Mr. Muirhead's conduct is to be referred. Did he fail to use the proper means? Did he neglect to apply them in the proper manner? Was he ignorant of what he ought to have known? If these things, or any of them, are so, he is answerable if he was the plaintiff's agent. If they are not so, he ought to be exonerated.

" The specific negligence charged in this instance is the failure to inform the plaintiff of the existence of the judgment under 'which the ground-rents were subsequently sold; and testimony has been adduced to show that whenever a judgment appears on the face of the searches, it is the duty of a conveyancer to disclose the existence of the judgment to his client, whether it is or is not, in his opinion, or according to the opinion of counsel, a lien. There is, however, no rule of law rendering such a disclosure imperative, and the question whether it should be made is one of facts and circumstances. When, for instance, the lien of a judgment expires by lapse of time, or when it is opened and a verdict rendered for the defendant which is confirmed by the court, the original judgment still remains on the judgment-index, and may be returned by the prothonotary if searches are ordered; and yet it cannot be said to be the duty of a lawyer to advert to the existence of such a judgment in giving an opinion upon the goodness of the title or advising a purchaser that it is safe to buy. The question whether the defendant is responsible for not disclosing this judgment is therefore an open question, which ought not to be decided adversely, unless the defendant was negligent. All that a professional man is bound to do in any case is to seek for information at the best sources, and apply that information honestly and fairly when obtained with proper care and diligence. His conduct is not necessarily to be judged by the result. It is rather to be tested by considering what was the best light to be had at the time, and whether the error, if he committed one, was the result of an excusable mistake or of negligence.

" In answering the points of the plaintiff, I say ' the 1st point proceeds upon the assumption that the check left by Mr. Cavender was money intrusted to the defendant to invest, and not money paid through the defendant to Mr. Macalester for the purchase of the ground-rent. Unless that assumption was correct the point is not applicable.' All that I think is necessary to say is, that if the defendant was guilty of negligence under the in-

[Watson v. Muirhead.]

structions already given, in the examination of the title, he is responsible. I give the same answer to the 2d and 3d points, and decline to affirm the 4th point presented by the plaintiff."

The verdict was for the defendant.

The plaintiff took a writ of error, and assigned for error the refusal of the court to affirm his points.

*D. W. Sellers* and *G. W. Thorn*, for plaintiff in error, cited 3 Bl. Com. 165; 2 Chitty on Pl. §§ 668, 669; Whitehead *v.* Greetham, 2 Bing. 464; Mertz *v.* Detwiler, 8 W. & S. 376; Derrickson *v.* Cady, 7 Barr 27; McCandless *v.* McWha, 10 Harris 261; Fowler *v.* Sergeant, 1 Grant 355; Eisenlohr *v.* Swain, 11 Casey 107.

*R. C. McMurtrie* and *E. Olmstead,* for defendant in error, cited Walter *v.* Sample, 1 Casey 275; During's Appeal, 1 Harris 224; Ner *v.* Emons, 1 Ves. 144; Haines *v.* Ellis, 12 Harris 253; Wright *v.* Brown, 8 Wright 224; Michigan Bank *v.* Merchants' Bank, 6 Metc. 13.

The opinion of the court was delivered, February 10th 1868, by

SHARSWOOD, J.—The business of a conveyancer is one of great importance and responsibility. It requires an acquaintance with the general principles of the law of real property and a large amount of practical knowledge, which can only be derived from experience. In England it has been pursued by lawyers of the greatest eminence. As our titles become more complex, with the increase of wealth, and the desires which always accompany it to continue it in our name and family as long as the law will permit, it will become more and more necessary that gentlemen prepared by a course of liberal education and previous study should devote themselves to it. There have been and still are such among us. The rule of liability for errors of judgment as applied to them ought to be the same as in the case of gentlemen in the practice of law or medicine. It is not a mere art, but a science. " That part of the profession," said Lord Mansfield, "which is carried on by attorneys is liberal and reputable, as well as useful to the public, when they conduct themselves with honor and integrity; and they ought to be protected when they act to the best of their skill and knowledge. But every man is liable to error; and I should be very sorry that it should be taken for granted that an attorney is answerable for every error or mistake. * * * * * A counsel may mistake as well as an attorney. Yet no one will say that a counsel who has been mistaken shall be charged. * * * Not only counsel, but judges, may differ, or doubt, or take time to consider. Therefore an attorney ought not to be liable in case of a reasonable doubt:" Pitt *v.* Yalden, 4 Burr. 2060. The rule

[*Watson v.* Muirhead.]

declared by Lord Mansfield has been followed in all the subsequent cases. "No attorney," said C. J. Abbott, "is bound to know all the law; God forbid that it should be imagined that an attorney or a counsel, or even a judge, is bound to know all the law; or that an attorney is to lose his fair recompense on account of an error, being such an error as a cautious man might fall into:" Montriou *v.* Jefferys, 2 C. & P. 113; and see Godefroy *v.* Dalton, 6 Bing. 460; Kemp *v.* Burt, 4 B. & Ad. 424; Gilbert *v.* Williams, 8 Mass. 51.

If the defendant had undertaken to act upon his own opinion that the judgment, which appeared on the searches, was not a final one, and therefore not a lien upon the ground-rent, the title of which it was his duty to examine, could we say that, before the decision of this court in Sellers *v.* Burk, 11 Wright 344, the mistake was one which could only result from the want of ordinary knowledge and skill or the failure to exercise due caution? But when in addition it appears that having been previously employed to investigate the same title, he had submitted it to eminent counsel, who had given a written opinion in its favor without even expressing a doubt as to the judgment in question, to hold him responsible would be to establish a rule, the direct effect of which would be to deter all prudent and responsible men from pursuing a vocation environed with such perils. We think the court below was right in refusing to charge as requested in the plaintiff's points; all of which assume as matter of law that to pass the title with such an encumbrance upon it was evidence of want of ordinary knowledge and skill and of due caution. We see therefore no error for which we ought to reverse.

Judgment affirmed.