Opinion of Court below—Opinion of the Court.   [33 Pa. Superior Ct.

executed, under the will, has no legal grievances against the exercise of discretion by his predecessor who delivered absolutely the securities named in the codicil.   I am referred to a decision of Judge TREXLER, in which the plaintiff maintains his present contention is sustained.   I have read in that case the testimony and opinion of the court.   No such question was presented or discussed.   Judgment certainly was entered against the Allentown National Bank for dividends, but the conclusions upon which that judgment was supported I have also here adopted.

Now, November 5, 1906, rule absolute and judgment is directed to be entered for the defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Harry A. Cyphers*, with him *James L. Marsteller*, for appellant.

*Aaron Goldsmith*, with him *Kirkpatrick & Maxwell*, for appellee.

PER CURIAM, February 25, 1907 :

We are of opinion that his case was correctly decided, and that all that need be said in vindication of the judgment is contained in the opinion of the learned judge below.

Judgment affirmed.

---

# Bodine *v.* Wayne Title & Trust Company, Appellant.

*Conveyancers—Negligence—Damages—Searches—Covenant to fence.*

Where a title insurance company agrees as a conveyancer to examine title to land, and see that it is clear and free of all incumbrances, and by a separate contract in writing at a different date it insures the title, and it appears that the company negligently overlooked an incumbrance on the land created by the deed of a former owner, suit may be brought immediately upon the breach by the person injured against the company for the negligent performance of its professional duty as

a conveyancer, and the question of the company's liability under its title policy is not in the case.

In an action against a conveyancer to recover damages for a loss resulting from negligence in overlooking a covenant in a deed in the line of title by which the owner of the land was bound to erect and perpetually maintain a fence along a railroad company's right of way, the measure of damages is the actual cost of the fence, and such gross sum as will produce annually the amount it will cost annually to maintain the fence and keep it in repair.

Argued Dec. 11, 1906.    Appeal, No. 170, Oct. T., 1906, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1904, No. 1,518, on verdict for plaintiff in case of S. Lawrence Bodine v. Wayne Title & Trust Company.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Trespass to recover damages for loss resulting from the negligence of the defendant as a conveyancer.    Before MC-MICHAEL, J.

The facts are stated in the opinion of the Superior Court.

At the trial the court charged as follows:

The cases in Pennsylvania have gone so far as to say in the alternative case, where the railroad company sues on its covenant, that what it is entitled to recover in a case of this kind is the cost of the fence and the cost of maintenance.    That testimony is to a certain extent positive.    You heard the witnesses. They differed somewhat in their estimates according to locality and according to their own experience.    But still, while one of us, I know, is not a farmer and does not know much about fencing, we know more than we did before we opened this case, and you have testimony of what the cost is.    Then we come to two matters, one of which was a matter of evidence and the other a matter of argument, but they are very interesting and they are matters which science will not solve but common sense may, and it is for you.    [One is the argument, supported by evidence of the plaintiff, who says he is damaged more than the cost of the fence and the cost of maintenance, because the fence, according to the testimony, is only going to last fifteen years, and when he is through that fifteen years he will have to erect another, and he says, therefore, he should

have a principal sum, which he gave you, which at interest, so much a year to be earned on that principal sum, will at the end of fifteen years enable him to go on with the fencing. I think the evidence was admissible and it is for you to determine whether the argument is properly drawn from that testimony. It is for you to draw the inference.] [11] On the other hand, defendant's counsel argued, supported by evidence, partly by the cross-examination of the plaintiff's witnesses and partly by the evidence of his own witnesses, that this was a farm and used for farm purposes, and he argued, with how much persuasiveness I do not know, but he argued that if this land was used as farm land, the plaintiff would need the fences anyhow, that he could not let his cattle be in there without having fences to turn the cattle, and that after all, this which is called a charge or incumbrance was nothing at all, that the plaintiff would have to do it anyhow.

Now, gentlemen of the jury, I shall leave the case with you, except for the answers to points, which I can only explain in this way, that a judge has not only to charge the jury on the evidence—and however much he may wish to let them go with a blessing, like the preacher, he must preach the sermon—but he must also answer any hypothetical points which, in the opinion of counsel, touch the case. But I think I have brought to your attention the questions which you are to decide by a common-sense consideration of the evidence. The salient question of fact, was the defendant company careless? Second, if it was, what did the plaintiff suffer? What was his loss? And with that I shall leave the case with you, after charging you on the points as submitted.

[A Juror; May I ask your honor a question? I am interested in this, because I have considerable business of this kind myself.

The Court: Yes.

The Juror: As I understand it, the defendant gave a policy of insurance. How does that affect the liability?

The Court: It does not affect it at all in my judgment. In my opinion—and you will take the law from me, subject to review hereafter—the policy of insurance, which was excluded, does not affect the question here. It is a very interesting and sensible question, and I am glad you asked it. But, subject to

review hereafter, the policy of insurance, which is a contract to indemnify the plaintiff, does not affect the question here. Here the plaintiff sues, as he has a right to sue, for the loss he suffered by the tort or wrong done by the defendant, and in my opinion, the policy of insurance has no bearing, except as it is part of the history of the case. He brings his suit for the loss which he suffered through the carelessness of the defendant company, which he employed and paid as a conveyancer to look up his title and get his searches and so on. The policy of insurance is a contract. Now, how far he might recover on that I do not know, I have not examined into it. How far he might, as was argued at length by counsel for the defendant, defalk against the mortgage is a matter depending on other considerations than we have here. I am glad the juror, who interested me very much before by his intelligent questions to counsel, asked me that question, because I can give my view, which is subject to review hereafter.] [7]

Defendant presented these points:

2. By the terms of the deed from William C. Latch to S. Lawrence Bodine, the property was conveyed freed from incumbrance done or suffered by Latch. Bodine, therefore, has a right of action against Latch for any damage which he has sustained by reason of the breach of this covenant, and there can be no recovery against the defendant in this case until Bodine has exhausted his remedy against Latch. *Answer:* Declined. [1]

The plaintiff's remedy in this case is primarily against Latch, his grantor, for breach of covenant, and there can be no recovery against the defendant until the plaintiff has exhausted his remedy against the grantor. *Answer:* Declined. [2]

11. The title insurance policy issued by the defendant and accepted by the plaintiff covers the terms of the contract and undertaking between them, and there can be no recovery in this case; suit should have been brought on the title policy. *Answer:* Declined. [4]

12. Under all the evidence the verdict should be for the defendant. *Answer:* Declined. [5]

Verdict for plaintiff for $1,351, upon which judgment was entered for $951, all above that amount having been remitted. Defendant appealed.

*Errors assigned* among others were (1, 2, 4, 5, 7, 11) above instructions, quoting them.

*V. Gilpin Robinson,* with him *Frederick B. Calvert,* for appellant.—Defendant is only liable for plaintiff's actual loss and the amount of his loss cannot be fixed until plaintiff has failed to recover in whole or in part from his grantor: Wolbert v. Lucas, 10 Pa. 73; Peck v. Jones, 70 Pa. 83; Wilson v. Ott, 173 Pa. 253; Watson v. Muirhead, 57 Pa. 161; Lynch v. Com., 16 S. &. R. 368; Riddle v. Poorman, 3 P. & W. 224; Cox v. Livingston, 2 W. & S. 103.

The measure of damages would appear to be fixed at the client's actual loss: Cox v. Livingston, 2 W. S. 103; Hart v. Allen, 2 Watts, 114.

The plaintiff's right to recover, if any, is on the insurance policy.

The separate contract, if any existed, merged in the joint contract: Miller v. Miller, 4 Pa. 317; Stine v. Sherk, 1 W & S. 195; Wodock v. Robinson, 148 Pa. 503; Colvin v. Schell, 1 Grant, 226; Creigh v. Beelin, 1 W. & S. 83; Gregory v. Griffin, 1 Pa. 208.

The court erred in fixing the measure of damages at the cost of erecting and maintaining the fence: Bronson v. Coffin, 108 Mass. 175.

*William S. Morris,* with him *G. Heide Norris,* for appellee. —The contracts are distinct and did not merge: Jones v. Johnson, 3 W. & S. 276; Close v. Zell, 141 Pa. 390.

The distinctive nature, purposes and remedies of the contracts of the conveyancer, and of the insurer under the law and facts of this case makes merger impossible: Lawall v. Groman, 180 Pa. 532.

The right of recovery against the defendant is not limited to action on the policy: Ahl v. Rhoads, 84 Pa. 319; Bradburn v. Railway Co., L. R. 10 Ex. 1; Lindsay v. Gas Co., 14 Pa. C. C. Rep. 181; Gales v. Hailman, 11 Pa. 515.

The plaintiff's right to recover of the defendant for its negligence is not postponed until his remedy against the vendor, if any, has been exhausted: Lawall v. Groman, 180 Pa. 532; Wilcox v. Plummer, 29 U. S. 172; Howell v. Young, 5 B. & C. 259; Rhines v. Evans, 66 Pa. 192.

The measure of damages for neglect of official duty, which class of cases includes professional employments of attorneys, conveyancers, physicians, etc., is that the injured party is entitled to compensation commensurate with the actual loss : Cox v. Livingston, 2 W. & S. 103 ; 1 Southerland on Damages, 411 ; Lawall v. Groman, 180 Pa. 532 ; Watson v. Muirhead, 57 Pa. 161 ; McCandless v. McWha, 22 Pa. 261 ; Wohlert v. Seibert, 23 Pa. Superior Ct. 213.

OPINION BY ORLADY, J., February 25, 1907 :

On July 27, 1902, the plaintiff entered into an agreement in writing with W. C. Latch for the purchase of a tract of 142 acres, more or less, of land in Chester county for the consideration of $25,000 ; $200 to be paid on signing the contract, and the balance upon the delivery to the plaintiff " of a full and satisfactory deed of conveyance for the premises." He then employed the defendant as a conveyancer " to examine the title, to see that the title was clear and free of all incumbrances ; to draw all necessary papers and to make a settlement and provide for a mortgage for the balance of the purchase price," and in addition to this, he requested the defendant company to insure the title in fee after it should vest in him. Pursuant to this arrangement the defendant company, acting for the plaintiff as his conveyancer, made an examination of the title, prepared the deed to be executed by Latch to Bodine, excepting thereout " a strip of land theretofore conveyed to the Pennsylvania Railroad Company by John S. Latch," a former owner, by a duly recorded deed dated May 2, 1899, and also a mortgage for $20,000 to secure to the grantor the unpaid purchase money. The deed from W. C. Latch to S. L. Bodine was executed and delivered on September 5, 1902, and a title insurance policy of $25,000 was issued by the defendant to S. L. Bodine dated September 9, 1902. October 6, 1902, the plaintiff paid $36.00 to the defendant as the charge for services rendered as conveyancer, and $62.50 as the consideration for the title insurance policy. In June, 1903, the plaintiff was informed by the Pennsylvania Railroad Company that by a recorded deed of Abraham S. Latch, a former owner of the property, to that company, dated October 6, 1890, it was covenanted that " the said Abraham S. Latch, his heirs and assigns, shall and will

erect good and substantial fences on the line between the land hereby conveyed and his remaining land adjoining the same, and that he and they shall and will at his and their own proper expense at all times hereafter maintain and keep the same in good repair," and the plaintiff was notified by the railroad company to perform the covenant, of which this defendant was promptly given notice, but it took no action in regard to it. It is conceded that this fencing agreement is an existing and continuing incumbrance on the title, and that it was overlooked or ignored in the search of the title made by the defendant company.

This action of trespass was brought to recover damages for the negligent performance of the professional duty of the defendant, while representing the plaintiff as his conveyancer. It is apparent that the undertaking to perform the duties of a conveyancer was independent of the contract to insure the title to the property, and the negligence which resulted in the plaintiff's damage lay in the nonperformance of the duties of that employment. The function of conveyancer was fully ended when the deed and mortgage were delivered and the settlement made between W. C. Latch and the plaintiff, at which time the plaintiff was informed that there was no defect, lien, charge or incumbrance against the property. The charge for such service was separate of any other relation the company held to the plaintiff. The effects of the respective contracts were widely different, they were not executed at the same time, did not terminate at the same time, and were founded upon independent considerations, and there is no necessary connection between them. The cause of action against the conveyancer was the breach of duty, not the damages, which are only an incident; and it has been uniformly held that the right of action is complete so that the statute of limitations begins to run from the breach, although the damage may not be known or may not in fact occur until afterwards : Lawall v. Groman, 180 Pa. 532. The contract on which this action is founded not only precedes the contract of insurance but is independent of it, so that the question of merger does not arise: 20 Am. & Eng. Ency. of Law, 596 ; Close v. Zell, 141 Pa. 390 ; Kemp v. Penna. R. R. Co., 156 Pa. 430 ; Lehman v. Paxton, 7 Pa. Superior Ct. 259 ; Wilson v. Pearl, 12 Pa. Superior Ct. 66.

The plaintiff was liable to the railroad company under the covenant to erect, maintain and keep in good repair substantial fences on the line between its property and his own. The evidence shows that the covenant covered a distance of 4,270 feet, or 427 panels of the post rail fencing in ordinary use in the neighborhood, of which 152 panels had been built by the railroad company, and for the erection of which the railroad company had recovered a judgment against the plaintiff, which at the time of the trial of this case was still standing against him. There was undisputed proof of actual loss to and a continuing liability of the plaintiff under the covenant to fence the line common between his land and that of the railroad company, hence he could enforce his right against the conveyancer for negligence before proceeding to test the liability of the grantor, or pursue his right, if he had any, under his policy of insurance. The negligence of the conveyancer which violated its contract is practically conceded, and the plaintiff had the right to sue at once : Mayne on Damages, 7th ed., 120, 185 ; Joyce on Damages, sec. 2078 ; Rhines v. Evans, 66 Pa. 192 ; Lawall v. Groman, 180 Pa. 532 ; Gales v. Hailman, 11 Pa. 515.

The dignity of that branch of the practice of the law is stated by Judge SHARSWOOD in Watson v. Muirhead, 57 Pa. 161, as follows : " The business of a conveyancer is one of great importance and responsibility. It requires an acquaintance with the general principles of the law of real property, and a large amount of practical knowledge, which can only be derived from experience . . . . The rule of liability for errors of judgment as applied to them ought to be the same as in the case of gentlemen in the practice of law or medicine. It is not a mere art but a science." If from want of proper knowledge, from a failure to use proper means, or from carelessness in applying those means to the matter in hand, loss results to his client, the fault is his and he will be responsible.

The agreement to maintain perpetually such a fence as is described in this record was a serious incumbrance : Batley v. Foerderer, 162 Pa. 460 ; Scowden v. Erie Railroad Co., 26 Pa. Superior Ct. 15. In Erie, etc., Railroad Co. v. Johnson, 101 Pa. 555, the court below was requested to charge the jury that the proper measure of damages upon failure to perform the contract to fence was the difference in the market value of the farm, with

the covenant on the part of the railroad company performed, and with it not performed. The answer was, "upon a breach of the contract of defendant to keep and maintain a good and substantial fence on both sides of the line of its road through plaintiff's farm, the measure of damages for such breach is what it would cost to build, keep and maintain perpetually a good substantial fence on both sides of defendant's railroad through plaintiff's farm the length of about 280 rods. In arriving at such measure, it would be a safe rule to capitalize the annual expense; that is to say, what gross sum would produce annually the amount it would cost annually to maintain and keep in repair the fence in question." In affirming the judgment the Supreme Court said: "Whether the land was good or bad, or whether the farm was great or small, the question, and the only question, was, what would be the cost of the maintenance perpetually of 280 rods of fence: " Wood v. Sharpless, 174 Pa. 588. That case related to the maintenance and proper repair of the fences then upon the land. In this case we have the added element of damage in the cost of original construction.

The verdict returned by the jury itemized the damages: Cost of erecting fence, 420 panels at $1.15, $483, and cost of maintenance $660, and cost of repairs $400, or $1,543. Subsequently all over $951 was remitted by the plaintiff and the judgment was entered for the amount represented by the two first items, the erection and maintenance of the fence. These items were justified by the evidence and the rule adopted by the court and jury is in accordance with cases above cited.

The judgment is affirmed.