LaBrum et al. *v.* Commonwealth Title Company of Philadelphia, Appellant.

Argued December 2, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON and JONES, JJ.

240  reargument
refused January 21, 1948.

*Morris Wolf*, with him *Wolf, Block, Schorr & Solis-Cohen*, for appellant.

*J. Harry LaBrum*, in propria persona, with him *Conlen, LaBrum & Beechwood*, for appellee.

*David F. Maxwell*, in propria persona, with him *Edmonds, Obermayer & Rebmann*, for intervenors, Committee on Unauthorized Practice of Law of Pennsylvania Bar Association.

OPINION BY MR. JUSTICE LINN, January 5, 1948:

The plaintiffs, members of the Philadelphia Bar [1] Association's Committee on Unauthorized Practice of the Law, filed this class bill against the defendant,[2] alleging that, in specified respects, defendant is engaged in the unauthorized practice of law which should be enjoined.

The defendant Commonwealth Title Company filed a responsive answer denying the material averments. It is a corporation existing pursuant to the general corporation Act of April 29, 1874, P. L. 73, which provides in section 29, "Companies incorporated under the provisions of this act for the insurance of owners of real

[1] A similar committee of the Pennsylvania Bar Association intervened.

[2] The suit was originally against two title insurance companies which merged after the bill was filed.

estate, mortgages, and others interested in real estate, from loss by reason of defective titles, liens and incumbrances, shall have the power and right to make insurances of every kind pertaining to or connected with titles to real estate, and shall have the power and right to make, execute and perfect such and so many contracts, agreements, policies and other instruments as may be required therefor."

The case was heard on bill and answer. In such hearing, relevant averments in the answer, whether responsive to the bill or stated as independent matter of defense, are accepted as true and all averments of the bill, denied or qualified in the answer, are rejected: *Stone v. New Schiller B. & L. Ass'n,* 293 Pa. 161, 167, 142 A. 2d 93; *Beckman v. Altoona Trust Co.,* 332 Pa. 545, 548, 2 A. 2d 826. Accordingly, we have for consideration the legal effect of the following business conducted by defendant as stated in its answer.

"(a) We have prepared for a compensation deeds, mortgages, assignments of mortgages, agreements (but relating solely to real estate matters), releases of real estate and declarations of no set-off, and no other legal instruments, but we have prepared the foregoing instruments only for persons to or for whom applications for title insurance had been issued or were contemplated to be issued by us, and then only in situations, instances, and circumstances in which such instruments were incidental to the insuring by us of titles to real estate.

"(b) We have no desire or intention to advise or consult, and believe that we have not advised or consulted, persons to or for whom title insurance was issued, or other persons, with respect to the application of statutes or case law to particular fact situations arising in connection with real estate transactions or conveyances or with respect to the legal effect of other legal documents or instruments, but we have informed persons to or for whom applications for title insurance were issued or were contemplated to be issued by us, of the

conditions upon which we would be willing to issue title insurance in the particular fact situations arising in connection with such applications.

"(c) We have prepared deeds, mortgages, assignments of mortgages, and other incidental papers with respect to real estate for real estate brokers where there was an application made or contemplated for title insurance to be issued by us to persons other than the real estate broker, but only with respect to the real estate which was the subject of the application for title insurance and as incidental to the issue of title insurance.

"The foregoing acts constitute only a trifling part of our title insurance business, less than 1% thereof, and we perform them solely as an incident of and concomitant with our title insurance business and in connection with our title insurance transactions.

"We do not hold ourself out to the public as willing, able or authorized to do any business except title insurance business."

The learned court below was of opinion that the described activities constituted unlawful practice of law.

The title of the Act of April 28, 1899, P. L. 117, 17 PS 1608, is: "An Act Making it unlawful for any person to hold himself out or advertise himself as a lawyer, attorney-at-law, or counsellor-at-law in any county of the State of Pennsylvania unless duly admitted to practice by a court of record of any county in this Commonwealth, and providing a penalty therefor." Section 1 made it "unlawful for any person . . . to hold himself out to the public as being entitled to practice law before the courts of the county, or use or advertise the title of lawyer, attorney-at-law, attorney and counsellor-at-law, counsellor, or the equivalent in any language, in such a manner as to convey the impression that he is a legal practitioner in said county, or in any manner to advertise that he, either alone or together with another person, or persons, has, owns, conducts or maintains a law

office, or law and collection office of any kind for the practice of law, without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth." Section 2 provided that "Any person or persons violating the provisions of this act shall be guilty of a misdemeanor, and shall upon conviction thereof be sentenced to pay a fine not exceeding five hundred dollars and to undergo an imprisonment not exceeding one year, either or both, at the discretion of the court."

The Act was amended in 1913, P. L. 80, 17 PS 1608, "by extending its provisions," as the title states, "so as to embrace the practice of the law of this or any other State, nation, country, or land, and so as to embrace the practice of the law out of court as well as before the courts." In 1933, P. L. 66, 17 PS 1608, the Act was again amended by including "partnership, association, or corporation" within the prohibition.

The penal provisions must be strictly construed; Statutory Construction Act of 1937, P. L. 1019, section 58, 46 PS 558. We all agree that the undisputed facts present a case that is not within the terms of the Act for unless defendant's acts are clearly prohibited, there is no violation of the statute. An important fact is that defendant does "not hold itself out to the public as willing, able or authorized to do any business except title insurance business." The other important fact is: defendant prepares "deeds, mortgages, assignments of mortgages, agreements (but relating solely to real estate matters), releases of real estate and declarations of no set-off and no other legal instruments, but we have prepared the foregoing instruments only for persons to or for whom applications for title insurance had been issued or were contemplated to be issued by [defendant] and then only in situations, instances, and circumstances in which such instruments were incidental to the insuring by [defendant] of titles to real estate." In considering those facts it is well to have in mind that the statute

under which defendant was incorporated expressly conferred "power and right to make, execute, and perfect such and so many contracts, agreements, policies, and other instruments as may be required therefor."

The learned court below was of opinion that the challenged activity was not taken out of the statutory prohibition by the fact that (in the words of the opinion filed below) "defendant performs all such acts only in connection with titles insured by it and therefore incidental to such transactions."

All the acts in question have to do with the transfer of title, that is, with conveyances and conveyancing. In order to decide whether defendant will insure a title, defendant must first examine and pass upon the instrument or instruments evidencing the transfer. Its charter authorizes all steps necessary for the enjoyment of its corporate franchise. If examination of the instrument discloses defects that the insurer thinks must be corrected before the title can be insured, it must of course be redrawn in the interest of both insurer and insured. Drawing the instrument correctly in the first place is no more unauthorized practice of law than examining or approving it after it has been drawn, or returning it for correction after it has been found to have been erroniously drawn. To examine and pass on the provisions of the instrument can therefore not be held to be unauthorized practice of law; on the contrary, it is authorized.

Conveyancing by itself is an art and has been referred to as a science. The legislature in the Building & Loan Code of 1933, P. L. 457, 15 PS 1074, recognized conveyancers among the officers of such associations: sec. 410, P. L. 479, 15 PS 1074. From the earliest days in this Commonwealth, justices of the peace, aldermen and local magistrates have drawn and still continue to draw leases, deeds and mortgages without holding themselves out as lawyers or engaging in the practice of law in the sense condemned by the statute. Real estate brokers

perform the same acts as incidents of their business.[3] All this the legislature must have known when it passed the Act of 1899 and its amendments, but notwithstanding such knowledge, it is significant that the legislature gave no expression of intention to prohibit those practices. We must regard the legislature as having recognized that in this jurisdiction conveyancers and lawyers have been dealt with in separate classes: compare *Watson v. Muirhead,* 57 Pa. 161; *Bodine v. Wayne Title, etc., Co.,* 33 Pa. Superior Ct. 68.[4] This Court considered the difference between the two classes in *Childs v. Smeltzer,* 315 Pa. 9.[5] If it be conceded that the preparation of leases, deeds, mortgages and the other instruments mentioned in defendant's answer, constitutes practicing law,[6] that concession does not mean that, while so en-

---

[3] The title to the Real Estate Brokers License Act of 1929, P. L. 1216, 63 PS 431, is, "To define real estate brokers and real estate salesmen; and providing for the licensing, regulation and supervision of resident and nonresident real estate brokers and real estate salesmen and their business." See *Verona v. Schenley Farms Co.,* 312 Pa. 57, 167 A. 317; *Young v. Dept. of Public Instruction,* 105 Pa. Superior Ct. 153, 160 A. 151.

[4] In volume 2 of *Johnson's England* at page 287 in his Essays on The Law and Lawyers, Sir F. D. Mackinnon (later Lord Justice Mackinnon) said, "The earliest Law List I have seen is of the year 1783. Including twelve Sergeants and seventeen King's Counsel, there were then less than 350 men at the Bar. There were also some Conveyancers, who were not called to the Bar. These were mostly Roman Catholics who adopted this line because they were incapable of being called."

[5] See also *Umble's Estate,* 117 Pa. Superior Ct. 15, 177 A. 340; *Umble's Estate,* 323 Pa. 170, 186 A. 75.

[6] The conclusion we have reached makes it unnecessary to discuss generally the unauthorized practice of law. The subject is considered in *Shortz v. Farrell,* 327 Pa. 81, 193 A. 20; *Umble's Estate,* 323 Pa. 170, 186 A. 75; *Umble's Estate,* 117 Pa. Superior Ct. 15, 177 A. 340; *Blair v. Motor Carriers Serv. Bureau,* 40 D. & C. Rep. 413; *Trust Companies and the Practice of Law,* 68 U. of Pa. L. Rev. 356; *Merrick v. American Security and Trust Co.,* 107 F. 2d 271, cert. denied 308 U. S. 625; *People v. Alfani,* 227 N. Y. 334; *People v. Title Guarantee & Trust Co.,* 227 N. Y. 366; *People v. Title Guarantee & T. Co.,* 230 N. Y. 578; *People v. Lawyers Title Corporation,* 282

gaged, the conveyancer is within the prohibition of the statute. If such condemnation had been intended by the legislature we think that intention would have been expressed. A strict construction of the statute excludes the conveyancer; he does not hold himself out as lawyer engaged in practicing law; he is engaged in practicing conveyancing. The defendant conveyancer in *Childs v. Smeltzer,* supra, was not enjoined from continuing as conveyancer; it was with respect to other acts which she held herself out to do that the court said it was "contrary to law for her to draft legal papers, such as wills, trust agreements, and instruments of that character, at her own discretion . . ." With respect to real estate brokers,[7] the court said at page 14, "There can be no objection to the preparation of deeds and mortgages or other contracts by such brokers so long as the papers involved pertain to and grow out of their business transactions and are intimately connected therewith. The drafting and execution of legal instruments is a necessary concomitant of many businesses and cannot be considered unlawful. Such practice only falls within the prohibition of the act when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them, and when the person so drafting them is not a member of

N. Y. 513; *People v. Schreiber,* 250 Ill. 345; *People ex rel. Illinois State Bar Assn. v. Peoples Stock Yards State Bank,* 344 Ill. 462; *In re Unauthorized Practice of Law, Gore, Appellant,* 58 Ohio App. Rep. 79; *Hexter Title and Abstract Co. v. Grievance Com.,* 142 Texas 506; *Paul v. Stanley,* 168 Wash. 371; *State v. Connon* (Wisc.) 240 N. W. 441; *Opinion of the Justices,* 289 Mass. 607; *Creditors National Clearing House v. Bannwart,* 227 Mass. 579; *In re Duncan,* 83 So. Car. 186; *In re Contempt Proceedings of Eastern Idaho Loan & Trust Co.,* 49 Idaho 280; *Boykin v. Hopkins,* 174 Ga. 511; *Com. v. Jones and Robins, Inc.,* (W. Va.) 41 S. E. 2d 720; *Hobson v. Kentucky Trust Co.,* 197 S. W. 2d 454; *State ex rel. v. Rice,* 236 Wisc. 38; *The Unauthorized Practice of Law,* by Paul P. Ashley, 16 A. B. A. Journal 558; *The Practice of Law by Corporations,* 44 Harv. L. Rev. 1114; *Thornton on Attorneys at Law,* section 69.

[7] Separately subjected to regulation by the Act referred to above.

the bar and holds himself out as specially qualified and competent to do that type of work. A real estate broker is not prohibited from drawing a deed of conveyance, or other appropriate instrument relating to property of which he or his associates have negotiated a sale or lease."

What was said in the opinion in *Childs v. Smeltzer* illustrates the application of the principle to be applied to this record. The cases from other jurisdictions cited by plaintiffs can therefore not be followed in construing our statute. There is in the present case no holding out as lawyer; the legal work complained of is not general but merely incidental to the title insurance which defendant's charter authorizes.

Decree reversed; bill dismissed; each party to pay its own costs.