**TICOR TITLE INSURANCE COMPANY,**
**Plaintiff–Appellee,**

v.

**Milton W. SMITH,**
**Defendant–Appellant,**

**and**

**Colonial Title Company, Defendant.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

March 30, 1990.

Application for Permission to Appeal
Denied by Supreme Court
July 16, 1990.

H. Naill Falls, Jr., Farris, Warfield & Kanaday, Nashville, for plaintiff-appellee.

Tom Corts, Ortale, Kelley, Herbert & Crawford, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

Plaintiff, Ticor Title Insurance Company (Ticor), filed its complaint against defen-

dants, Milton W. Smith (Smith) and Colonial Title Company,[1] and alleged that Ticor was entitled to indemnification from its agent Smith. Ticor asserted two reasons why it was entitled to indemnification: (1) That Smith breached Section 8A of the "Issuing Agency Contract" (Contract) between the parties by failing to comply with Section 8A of the Contract; and (2) that Smith was negligent in failing to discover and disclose unpaid taxes encumbering the property, the title to which Smith had caused Ticor to insure.

In his answer, Smith denied that he was guilty of negligence or that he violated Section 8A of the Contract but alleged that, in any event, the relationship between the parties was that of attorney and client, and not principal and agent. Smith insisted that Ticor's suit therefore was one for attorney malpractice and barred by the one-year statute of limitations applicable to attorneys.

The trial court, following a bench trial, found that the relationship between the parties was that of principal and agent, that Smith had failed to comply with Section 8A of the Contract requiring prior approval from Ticor before a title policy in excess of $250,000 could issue, and that Smith was negligent in failing to discover

1. The "Issuing Agency Contract" somewhat imprecisely suggests that both Smith and Colonial Title Company were parties to the contract. However, the evidence shows, and the trial court found in dismissing the suit against Colonial, that Smith was deemed the agent both by himself and Ticor. No appeal has been taken from the dismissal of Colonial Title Company.

2. At that time Ticor was known as Pioneer National Title Insurance Company.

3. 3. The agent shall:
A. Receive and process applications for title insurance in accordance with the usual and customary practices and procedures of responsible title insurance companies in the conduct of their business in a prudent, safe, sound, and ethical manner in accordance with recognized title underwriting principles and the rules, regulations and instructions of the principal. The determination of the insurability of any title shall be based upon:
a. A search by the agent of all relevant public records.
b. An examination of the abstract of title prepared and certified by the agent or by another recognized abstracter whose work is

and disclose unpaid 1985 taxes encumbering the property on which the title policy issued. The trial court determined that as a result Ticor is entitled to indemnification from Smith and entered judgment for Ticor for $56,830.99 plus interest. This judgment included attorneys' fees of $8,621.41.

## FACTS

Ticor, a California corporation, is engaged in the title insurance business. Smith is an attorney practicing in Nashville, Tennessee.

On 19 May 1980, Ticor[2] entered into an "ISSUING AGENCY CONTRACT" under which Smith was authorized, *inter alia*, to sign, countersign, and issue commitments, binders, title reports, title insurance policies, and endorsements under which Ticor assumed liability for the condition of title to real estate. The Contract was signed for Ticor by Charles W. Murrell, "Vice President," and by Milton W. Smith, Jr., "Attorney."

Pursuant to Section 4 of the Contract, Smith could not, without the written approval of Ticor, commit Ticor to a "risk in excess of $250,000.00...." In addition, the Contract prescribes certain procedures which the agent was to follow.[3]

accepted by prudent local title examiners and whose work shows all relevant public records.
c. An examination of the agent's indices and records supplemental to the extent necessary by an abstract or search of the relevant public records.
d. Title reports or opinions, on forms furnished or approved by the principal, by examiners approved by the principal.
B. Preserve in his possession all supporting documents on which the determination of insurability is made, including, but not limited to, affidavits, lien waivers, searches, and work sheets; and provide the principal with access to said documents at any reasonable time or times.
C. Assume full responsibility for the collection of all premiums due the principal in accordance with the remittance schedule attached hereto and made a part hereof, and pay to the principal the principal's share of such premiums on or before the 10th day of the succeeding month in which the premium-bearing form was issued. Each payment to the principal shall be accompanied by a copy of each premium-bearing form under which the principal assumes liability for the condi-

Paragraph 12 of the Contract provided: "The principal may from time to time promulgate rules for the transaction of its business by the agent. The agent agrees to abide by such rules and regulations."

Section 8A of the Contract provided that Smith agreed to indemnify Ticor for all losses and damages resulting from the agent's failure to comply with the terms of the Contract. Section 8B provides that Smith will indemnify Ticor for "[n]egligent errors or omissions in agent's abstracting or examining of title."

On 5 November 1980, Smith wrote and issued a Ticor Title Insurance policy in favor of General Electric Credit Corporation (GECC), insuring title to two parcels of real estate, the Tennessee Theater and the adjoining Tennessee Theater building, located on Church Street in Nashville, Tennessee. One parcel was then owned by J. Michael Tomlin (the fee parcel) and the other by Odd Fellow Hall Association (the leasehold parcel) that was under long-term lease to Mr. Tomlin. GECC had agreed to make loans to Mr. Tomlin secured by deeds of trust on both parcels.

In February 1986 and May 1986, at GECC's request Smith issued updated endorsements to the November 1980 Ticor title policy. The endorsements in effect updated to the date of endorsement the title insurance policy's warranties regarding condition of title.

In doing the title work in connection with the February and May endorsements, Smith failed to discover that the 1985 taxes had not been paid with respect to the leasehold parcel. Smith therefore issued the endorsements without excluding the 1985 taxes from the title warranty.

Sometime thereafter, Tomlin bankrupted. In preparing to sell the Tennessee building and the Tennessee Theater, GECC discovered that the 1985 taxes had not been paid on the leasehold parcel.

On 12 June 1987, Smith received a letter from James W. Kelly, GECC's attorney, notifying Smith that the 1985 taxes had not been paid and that if the bid at the auction of the property scheduled for 14 July 1987 was not sufficient, then GECC would make a claim under its policy of title insurance issued by Ticor.

Smith attended the auction and learned that the amount of the bid was insufficient to pay the 1985 taxes.

On 20 July 1987, Smith phoned William E. Bozeman, Vice–President and state manager of Ticor, and informed him of the problem and also that GECC had been forced to pay the 1985 taxes in the amount of $48,189.58. Smith further informed Mr. Bozeman of the June 1987 letter from Mr. Kelly. Smith informed Mr. Bozeman that he had missed the fact that the 1985 taxes had not been paid. He stated that he had missed these because there was a discrepancy in the numbering system at the register's office and trustee's office.

A claim was made by GECC for the amount of the 1985 taxes GECC had paid. The claim was made by letter dated 21 July 1987, and received by Ticor on 22 July 1987.

tion of title, issued during the period covered by the remittance; provided, however, that in those areas where payment of the premium is paid upon issuance of the commitment, or binder, the agent shall remit the principal's portion of the premium at the time and in the manner required by the company.

D. Keep a policy register in a form approved by the principal in which the agent shall enter a record of and show the disposition of all policies, endorsements and other contracts under which the principal assumes liability for the condition of title. The agent shall be liable in damage for any loss resulting to the principal by reason of the loss or wrongful use of any premium-bearing forms.

E. Keep safely and segregated in a bank account all monies that may be entrusted to the agent by the principal or others in the course of the agent's operations hereunder, and keep safely any property so entrusted to the agent. Any funds or property deposited with the agent in excess of $1,000.00 as security for the disposition of, or affirmative insurance with respect to a matter that would be included in Schedule "B" of the policy, shall be transferred to the principal on or before the 10th day of the succeeding month in which it was received, together with a copy of the agreement or other documentation pursuant to which the funds or property were received, and such funds or property are to be retained by and under the control of the principal in the same manner as similar funds or property held by the principal pending disposition pursuant to the agreement under which it was received.

Smith, on 23 July 1987, in a handwritten letter to Mr. Bozeman at Ticor's Nashville office, set forth the details of the situation concerning the 1985 taxes on the leasehold parcel and included all relevant documentation.

On 30 December 1987, Ticor paid GECC $48,189.58, representing the unpaid taxes which GECC had been forced to pay. On 28 July 1988, Ticor filed this suit against Smith and Colonial Title Company.

Smith presents one issue: Whether "the court erred in finding that the statute of limitations for professional negligence was inapplicable to the case at bar."

■ Smith insists that the relationship between Smith and Ticor was attorney and client and that the one-year statute provided for in Tenn.Code Ann. § 28–3–104 [4] is applicable. Smith argues that Ticor's cause of action against him accrued on 23 July 1987 and that, since suit was not commenced until 28 July 1988, it is barred.

We must first determine if the relationship between the parties is that of attorney and client or, as the trial court found, principal and agent.

Smith is a lawyer who has practiced his profession in Nashville, Tennessee, for more than twenty years. However, "the fact that one is a lawyer does not prevent his becoming the agent of another for purposes other than the practice of his profession." 3 Am.Jur.2d *Agency* § 13 (1986) (footnote omitted). Rule of the Supreme Court 8 EC 3–3 provides in part: "The Disciplinary Rules protect the public in that they prohibit a lawyer ... from submitting to the control of others in the exercise of his judgment." *Id.* A lawyer may not in representing a client surrender to the client or others his independent judgment.

"[W]hile attorneys at law ... may, in some respects at least, be regarded as agents, they are distinguishable from general agents because their authority is of a special and limited character in most respects." 3 Am.Jur.2d *Agency* § 3 (1986) (footnotes omitted).

"A general agent is usually authorized to do all acts connected with the business ... in which he is engaged...." 3 Am.Jur.2d *Agency* § 6 (1986).

Here Smith, pursuant to the Contract, was appointed "to be an agent of the principal for the transaction of [the principal's] business" in six Tennessee counties. Smith, as agent of Ticor, was authorized to "sign, countersign, and issue commitments, binders, title reports, title insurance policies, endorsements and other contracts under which [Ticor] assumes liability for the condition of title."

Ticor is engaged in the title insurance business. Smith was authorized to do all acts necessary to care for Ticor's business. However, the Contract goes into great detail about how Smith as Ticor's agent is to perform these acts. Section 3 even goes into detail about how he is to search a title. Smith, as Ticor's agent, has little, if any, independence. Pursuant to Section 12, Smith agrees to "abide by ... rules and regulations" which were not in effect at the time the contract was executed but which might be promulgated in the future. The attorney-client relationship is antipathetic to having the attorney agree that he/she will abide by rules and regulations which the client may promulgate in the future. An attorney must be able to maintain his independence. Under the contract here, Smith exercised little, if any, independence in carrying out his duties as an agent of Ticor.

There is no evidence in the record that Ticor ever retained Smith as an attorney. Instead, a review of the contract shows that Ticor contracted with Smith as an agent to write title insurance.

■ Smith insists that since he must ascertain the status of the title to the property that he performs the function of an attorney. It is not necessary to be a lawyer in order to ascertain or review the status of the title to real property for the purpose of issuing a title insurance policy.

**4.** Tenn.Code Ann. § 28–3–104 provides in pertinent part:
"[A]ctions and suits against attorneys for malpractice, whether said actions are grounded or based in contract or tort ... shall be commenced within one (1) year after cause of action accrued." *Id.*

**738**

*See Bar Ass'n. of Tenn., Inc. v. Union Planters Title Guar. Co.*, 46 Tenn.App. 100, 326 S.W.2d 767 (1959); *State v. Retail Credit Men's Ass'n.*, 163 Tenn. 450, 43 S.W.2d 918 (1931).[5]

■ We are of the opinion that Tenn. Code Ann. § 56–35–131[6] upon which Smith also relies does not dictate that Smith's and Ticor's relationship was one of attorney and client. Tennessee Code Annotated § 56–35–131 simply provides that one of the possible preconditions for operating a title insurance business in Tennessee is that the agency or agent be an attorney. The statute is clear that non-attorneys may engage in the title insurance business without engaging in the practice of law.

Smith also relies on *Stinson v. Brand*, 738 S.W.2d 186 (Tenn.1987), and *Collins v. Binkley*, 750 S.W.2d 737 (Tenn.1988). The only issue in either of these cases was whether the plaintiffs had standing to sue an attorney in the absence of privity. They are inapposite to the facts here.

We have considered each of Smith's arguments and find them to be without merit. The Contract in this case and the facts clearly show that the relationship between Ticor and Smith was that of principal and agent and not attorney and client.

The one-year statute of limitations set forth in Tenn.Code Ann. § 28–3–104 is not applicable.

The judgment of the trial court is affirmed with costs assessed to defendant-appellant Milton W. Smith and the cause remanded to the trial court for the collection of costs, the enforcement of its judgment, and any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.

---

**5.** Other jurisdictions have also held that title insurance companies may review the status of title to real property as a condition precedent to the issuance of a title insurance policy without engaging in the practice of law. See, e.g., *Cooperman v. West Coast Title Co.*, 75 So.2d 818 (Fla.1954); *La Brum v. Commonwealth Title Co.*, 358 Pa. 239, 56 A.2d 246 (1948); *Florida Bar v. McPhee*, 195 So.2d 552 (Fla.1967).

**6.** Section 56–35–131 provides as follows:

**Additional requirements for license or certificates—Violation of agreements.**—(a) Except as provided by §§ 56–35–201 and 56–35–204, the commissioner shall refuse to issue any new license or certificate to any title insurance company, title insurance agent, or title insurance agency, unless the applicant therefor shall agree to abide by any one (1) of the following terms and conditions:

(1) The gross operating revenues for any fiscal year attributable to the placement or issuance of policies or contracts of title insurance derived from all sources of controlled business shall not exceed forty percent (40%) of the gross operating revenues of such company, agent, or agency;

(2) The company, agent, or agency will be operated as a subsidiary of a financial institution with its primary business being that of accepting deposits and making real estate loans and subject to regulation, inspection, and supervision of the United States government or an agency thereof; or

(3) The title insurance agency or agent is to be operated by an attorney, a single partnership of attorneys, or a single professional corporation of attorneys as an ancillary part of the general practice of law.

(b) Any violation of the terms and conditions of such agreement shall serve as grounds for the commissioner to suspend or revoke the license or certificate to which the agreement pertains and to assess a civil penalty as provided by § 56–35–127.
*Id.*