992 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles G. HANSON, III; Jayne Hanson; Hanson Ventures,
Inc., d/b/a Texas TLC, Plaintiffs-Appellants,
v.
RUDNICK & WOLFE; Pamela J. Mills, Defendants-Appellees,
and
Total Lifestyle Corporation; Jean Landsee; Cortland C.
McLeod; Tacker & Shelton, P.C., L. Douglas
Shelton, Defendants.
 No. 92-5480.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1993.
 
 Before JONES and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-Appellants Charles G. Hanson, III, Jayne Hanson (together, the "Hansons"), and Hanson Ventures, Inc., d/b/a Texas TLC (as a group, "Appellants"), appeal from the district court's order granting the motion of Defendants-Appellees Rudnick & Wolfe ("R & W," an Illinois law partnership) and Pamela J. Mills (a former associate of R & W, together, "Appellees") for summary judgment in this diversity case. The only issue raised by Appellants is whether the district court erred when it held that the statute of limitations found in Tennessee Code Annotated § 28-3-104 (Supp.1992) barred Appellants' claim against Appellees for professional negligence/negligent misrepresentation.[1] We conclude that the district court did not err, and thus affirm.
 
 
 2
 * Defendant Total Lifestyle Corporation ("TLC") sold franchises for a weight loss/behavior modification program offered to members of the public through medical professionals. In the spring of 1987, the Hansons, looking for investment opportunities, were contacted by a TLC representative with regard to the possibility of becoming a TLC "master franchisee," namely, a franchisee that sells TLC franchises to subfranchisees. Later, the Hansons were contacted by Defendants Jean Landsee and Cortland[2] C. McLeod, who had apparently formulated and developed the TLC program. Landsee allegedly claimed that she was a registered nurse, having received a B.A. degree in nursing from the Methodist Hospital School of Nursing in Memphis, Tennessee, in 1959. She also allegedly maintained that she had been engaged in weight loss programs for some years, and had tested the weight loss/behavior modification concept throughout the Millington, Tennessee area. "Dr. McLeod" (as he was allegedly referred to in TLC advertising brochures) allegedly informed the Hansons that he was a health care professional specializing in the area of nutrition, that he was a naturopath doctor, and that he had developed special products to be used in conjunction with the TLC program.
 
 
 3
 Also in the spring of 1987, a TLC Uniform Franchise Offering Circular ("UFOC") was delivered to the Hansons' home in California. This UFOC, containing financial data reviewed by Defendant Tacker & Shelton, P.C., was dated April 10, 1987, and stated that Landsee was a registered nurse.
 
 
 4
 Shortly thereafter, Charles G. Hanson, III, met with Landsee and McLeod at the TLC headquarters in Memphis, Tennessee, to discuss becoming a TLC master franchisee. The Hansons had other conversations with Landsee, McLeod, and other TLC representatives during which the Hansons were allegedly told that TLC had certain proprietary information and trade secrets not available to competitors in the industry; that TLC would be manufacturing unique products that would be distributed through franchisees at prices less than current wholesale prices; that they could establish a TLC master franchise in Texas; and that they would be able to sell two to three franchises per month in Texas.
 
 
 5
 In May 1987, the Hansons executed an agreement to acquire a TLC master franchise for Texas, and formed a company called "Texas TLC." Upon execution of the agreement, they paid $100,000 up front to TLC, and signed a promissory note for another $100,000. The Hansons then moved to Texas to start their enterprise.
 
 
 6
 They tried to sell TLC subfranchises in Texas, but found that the program was "not as easily marketed as it had been represented to be by Landsee, McLeod and TLC representatives." J.A. at 20 (Complaint for Treble Damages and/or Rescission ["Complaint"] at 7). They also allegedly discovered that McLeod had helped sell a TLC franchise in their territory despite their having exclusive rights to sell subfranchises therein; that "their market for special TLC products was not what it had been represented to be because the same products which had been represented to be distributed through franchisees at special pricing were available from other sources at more favorable prices," id.; that the financial information in the UFOC overstated TLC's total revenues, income before taxes, shareholders' equity, and total assets; that the UFOC had not been updated with Texas authorities as required by Texas law; that the registration of TLC trademarks was being opposed; that Landsee could not have gotten a B.A. in nursing from the Methodist Hospital School of Nursing because that institution does not offer such a degree; and that "Dr. McLeod" "has no such doctorate," id. at 22 (Complaint at 9).
 
 
 7
 On October 28, 1988, Appellants brought suit in the United States District Court for the Western District of Tennessee for damages and rescission of the franchise agreement against TLC, Landsee, McLeod, Tacker & Shelton, P.C., as well as Dan R. Tacker[3] and L. Douglas Shelton, certified public accountants. Based on the aforementioned alleged discoveries, Appellants alleged common law fraud and misrepresentation; violations of the Texas Business Opportunity Act; unfair and deceptive acts and practices in violation of the Tennessee Consumer Protection Act; "professional negligence"; and negligence per se.
 
 
 8
 On January 17, 1989, during a deposition of Landsee, it was apparently mentioned that Mills, an attorney at R & W from December 1984 to April 1988, assisted in the preparation of the UFOC. (Whether or not this information had come to the attention of the Hansons previous to the deposition is a subject of controversy.) On February 20, 1990, Appellants sought leave of the court to amend their Complaint to add Appellees as additional Defendants. Leave to amend was granted on March 8, 1990. The Appellants' First Amended Complaint for Treble Damages and/or Rescission ("First Amended Complaint"), filed on March 9, 1990, added that Appellees, by virtue of their legal assistance to other named Defendants: (1) made intentional misrepresentations relating to the UFOC; (2) violated the Texas Business Opportunity Act; (3) violated the Tennessee Consumer Protection Act; (4) engaged in "professional negligence"; and (5) were negligent per se.
 
 
 9
 On May 15, 1990, Appellees filed a Motion to Dismiss the First Amended Complaint or, Alternatively, for Summary Judgment. This motion was granted in September 1991. The district court ruled that no cause of action existed against Appellees under the Texas Business Opportunity Act and that the claim under the Tennessee Consumer Protection Act was barred by the relevant statute of limitations. As a result of these rulings, the negligence per se claim was dismissed because Appellants "failed to state a specific statutory violation upon which to base their claim." J.A. at 287 (Order on Motion to Dismiss or, Alternatively, for Summary Judgment ["Order-I"] at 6). Without deciding whether to apply Texas or Tennessee law, it also held that Appellants did not have a cause of action under Texas law against Appellees with respect to their "professional negligence" claim, and that Tennessee's one-year statute of limitations for attorney malpractice, Tenn.Code Ann. § 28-3-104, barred the "professional negligence" claim if one could otherwise be brought under Tennessee law. Finally, it found that the First Amended Complaint did not allege fraud with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. The court granted Appellants leave to further amend their action, stating that "[i]f plaintiffs know facts which justify allegations of intentional conduct against R & W and Mills, they must plead them." J.A. at 284 (Order-I at 3).
 
 
 10
 In October 1991, Appellants filed their Amendment to First Amend[ed] Complaint, adding a sixth cause of action against Appellees: "Negligent and/or Commercial Misrepresentation." On November 6, 1991, Appellees filed a Motion to Strike Amendment to First Amend[ed] Complaint or, Alternatively, for Summary Judgment. On March 2, 1992, this motion was granted. The district court held that the additional cause of action was "not substantively different from the claim for 'Professional Negligence' " previously dismissed via summary judgment, and restated its view that both Texas substantive law and the Tennessee statute of limitations warranted dismissal of the action. J.A. at 344-45 (Order on Defendants' Motion to Strike Amendment to First Amended Complaint or, Alternatively, for Summary Judgment ["Order-II"] at 3-4). On July 6, 1992, judgment was entered on the March 2, 1992 order.
 
 II
 
 11
 The district court held that Tennessee's one-year statute of limitations relating to attorney malpractice actions barred Appellants' professional negligence/negligent misrepresentation claim against Appellees. The relevant statute reads:
 
 
 12
 Personal tort actions.--(a) The following actions shall be commenced within one (1) year after the cause of action accrued:
 
 
 13
 ....
 
 
 14
 (2) Actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort....
 
 
 15
 Tenn.Code Ann. § 28-3-104. The district court held Appellants' professional negligence/negligent misrepresentation claim to be covered by this statute, and found Security Bank & Trust Co. v. Fabricating, Inc., 673 S.W.2d 860 (Tenn.1983), cert. denied, 469 U.S. 1038 (1984), to be persuasive authority for its holding.
 
 
 16
 In Security Bank & Trust, a municipality hired an attorney who was a member of a law firm to serve as special bond counsel: (1) to pass upon the legality and non-taxability of a proposed industrial revenue bond issue (to finance the construction of a manufacturing plant); (2) to prepare a lease between the municipality and the corporation that would operate the manufacturing plant; (3) to prepare a trust indenture; and (4) to prepare an offering circular to facilitate the sale of the bonds. Financial statements of the guarantors of the bond issue, prepared by a purported certified public accountant, were attached to the offering circular. The bond coupons falling due approximately two years after issuance of the bonds defaulted.
 
 
 17
 A plaintiff class of bondholders sued the law firm and its members serving as bond counsel to the municipality. They alleged
 
 
 18
 various acts of negligence on the part of [the lead attorney] in performing his duties as bond counsel with respect to the bond issue and particularly with respect to the offering circular which was published and circulated to assist in promoting the sale of the bonds. The primary allegation was that [the lead attorney] should have discovered the falsity of the financial statements of the promoters and guarantors of the bonds, that [the purported certified public accountant] was not a CPA, that the underwriters of the bond issue in question were under investigation by government agencies with respect to their activities in connection with other securities and that [the lead attorney's] failure to discover and disclose these and other deficiencies was a direct and proximate cause of the loss suffered by the bondholders.
 
 
 19
 Id. at 863. The Tennessee Supreme Court held that Tennessee Code Annotated § 28-3-104 barred the bondholders' cause of action against the law firm and its lawyers:
 
 
 20
 Clearly, the cause of action asserted against the defendant attorneys is one for malpractice in the performance of their duties as bond counsel; thus, the statute of limitations to be applied is that contained in T.C.A., § 28-3-104, which provides: "... actions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort, ... shall be commenced within one year after cause of action accrues.
 
 
 21
 Id. at 863-64.
 
 
 22
 Tellingly, Appellants, in their Brief, do not even mention, let alone attempt to distinguish Security Bank & Trust as they argue that their action against Appellees should not be barred by Section 28-3-104. They claim that the conduct which constitutes the basis for their action against Appellees should be considered "negligent misrepresentation--not attorney 'malpractice'--that resulted in property damage, for which Tennessee's three-year statute of limitations was applicable." Appellants' Br. at 9. Their argument is essentially that: (1) a claim for attorney "malpractice" can only be asserted by a client against her/his attorney; and (2) Appellees had no attorney-client relationship with Appellants; therefore (3) Appellants' action against Appellees arising from allegedly tortious conduct cannot fall under Section 28-3-104. Furthermore, according to Appellants, Tennessee permits claims to be brought against attorneys in the absence of an attorney-client relationship. Their action allegedly falls under this category. Thus, they argue, Tennessee Code Annotated § 28-3-105(1) (Supp.1992)[4] should be applied to the case at bar. As a consequence, they maintain, their action against Appellees is not barred by any Tennessee statute of limitations since their First Amended Complaint was filed within three years after their cause of action accrued.
 
 
 23
 Appellants cite to state cases from Michigan and New York, as well as federal cases from the Third and Fifth Circuits, to support the proposition that only clients can bring "malpractice" actions. They state that they are "aware of no Tennessee case speaking directly to this point." Appellants' Br. at 12. They omit mention of Security Bank & Trust, however, which specifically denominates a third-party suit against attorneys a "malpractice" cause of action. The district court in the instant case also noted two other opinions decided by the Tennessee Courts of Appeals in support of the proposition that Section 28-3-104(a) does not merely apply to clients suing attorneys, but applies as well to third parties suing attorneys: Citizens Bank v. Williford, No. 85-315-II, 1986 WL 6056 (Tenn.Ct.App. May 29, 1986) and Judd v. Cleary, No. 88-275-II, 1989 WL 17484 (Tenn.Ct.App. Mar. 3, 1989).
 
 
 24
 Focusing on the issue of whether Section 28-3-104 should be applied to the case at bar, Appellants find Bethlehem Steel Corp. v. Ernst & Whinney, 822 S.W.2d 592 (Tenn.1991), instructive. They contend that the holding in that case supports the proposition that Section 28-3-105 should apply to actions concerning negligent misrepresentation on the part of professionals which results in monetary loss. In Bethlehem Steel, a steel company allegedly relied on an unqualified audit report prepared by a major accounting firm at the request of and for the benefit of a customer of the steel company. The steel company, in alleged reliance on the report, extended unsecured credit to the customer so that it might purchase the steel company's steel, and allegedly incurred financial loss as a result of the transaction. The state appellate court considered in detail whether the gravamen of the plaintiff's complaint against the accounting firm constituted an injury to the person or to personal property. Deciding that the claim was essentially for injury to personal property, the court held that the three-year statute of limitations for "property tort actions" (Tenn.Code Ann. § 28-3-105) should apply, as opposed to the one-year statute of limitations for "personal tort actions" (Tenn.Code Ann. § 28-3-104). Bethlehem Steel Corp. v. Ernst & Whinney, No. 861, 1989 WL 139701, at * 4 (Tenn.Ct.App. Nov. 21, 1989). The Tennessee Supreme Court upheld the state appellate court's ruling regarding the applicable statute of limitations "for the reasons stated in [the state appellate court's] opinion." Bethlehem Steel, 822 S.W.2d at 596.
 
 
 25
 The state appellate court's opinion was handed down on November 21, 1989. On April 11, 1990, the Tennessee legislature passed an amendment to Section 28-3-104 to add "licensed public accountants or certified public accountants" to the list of those who must be sued for "malpractice" within one year after the cause of action accrues. This amendment is to be applied only to causes of action arising on or after July 1, 1990. 1990 Tenn.Pub. Acts 585, 586 ("SECTION 3. This act shall take effect July 1, 1990, the public welfare requiring it, and shall only apply to causes of action arising on or after July 1, 1990."). Thus, not only did the state appellate court consider the statute of limitations issue in Bethlehem Steel before the relevant amendment, but the Tennessee Supreme Court was bound to consider the case in a pre-amendment light. Had the relevant cause of action in Bethlehem Steel been subject to the amended Section 28-3-104, the statute of limitations issue might well have been decided differently by the Tennessee courts. Consequently, we find Appellants' reliance on Bethlehem Steel to be of no moment.
 
 
 26
 Appellants also cite Ticor Title Ins. Co. v. Smith, 794 S.W.2d 734 (Tenn.Ct.App.1990), as support for their argument that not all actions against attorneys are subject to the one-year statute of limitations of Section 28-3-104. In that case, the state appellate court held that the one-year statute of limitations did not apply to a professional negligence action against an attorney. Central to the court's holding, however, was the fact that the attorney was being sued not in his capacity as an attorney, but in his capacity as an agent of a title company. Id. at 737-78. Thus, this case is of precious little relevance to the issue of whether a professional negligence/negligent misrepresentation action brought against an attorney in her/his capacity as an attorney may escape the reaches of Section 28-3-104 under Tennessee law.
 
 
 27
 In sum, Appellants' argument is without merit. In Tennessee, at present, actions brought by third parties against attorneys for professional negligence/negligent misrepresentation of the sort involved in the instant case are to be considered "malpractice" actions and fall within the statute of limitations of Section 28-3-104.
 
 
 28
 AFFIRMED.
 
 
 29
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 30
 I have some question as to whether jurisdiction existed over the persons of the appellees, but I think we can finesse that rather thorny issue, just as the district court did, if we find no error in the district court's decision on the merits.
 
 
 31
 I agree with my colleagues on the panel that there was no such error. If Tennessee law applies, as the panel's opinion demonstrates, the claim against the appellees was barred by that state's one-year statute of limitations. If Texas law applies, as the district court correctly held, the plaintiffs have no claim against the appellees because of the lack of privity between them.
 
 
 
 [1]
 In addition, this court, sua sponte, raised the issue of whether in personam jurisdiction exists over Appellees, and called for supplemental briefs on the issue. Having considered the matter, we conclude that jurisdiction exists and thus proceed with the merits of the appeal
 
 
 [2]
 Sometimes spelled "Courtland" in the record
 
 
 [3]
 Dan R. Tacker was voluntarily dismissed from the suit on March 6, 1989
 
 
 [4]
 This provision reads:
 28-3-105. Property tort actions--Statutory liabilities.--The following actions shall be commenced within three (3) years from the accruing of the cause of action:
 (1) Actions for injuries to personal or real property....