IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 23, 2017 Session

## JERRY FAERBER, ET AL. v. TROUTMAN & TROUTMAN, P.C., ET AL

Appeal from the Circuit Court for Campbell County
No. 15495    Don R. Ash, Senior Judge

_____

No. E2016-01378-COA-R3-CV

_____

Appellees entered into a contract for the purchase of an undeveloped lot in a planned unit development.  Appellants, an attorney and his law firm, prepared closing documents, including a warranty deed and settlement statement.  The warranty deed included language that the property was unencumbered, and the settlement statement provided for payoff of the first mortgage and for the purchase of title insurance.  Appellees later discovered that Appellants had failed to procure release of the first lien and had also failed to procure title insurance.  The property was foreclosed, and Appellees filed suit against Appellants for negligent misrepresentation and violation of the Tennessee Consumer Protection Act.  The trial court found Appellees liable on these claims.  We concluded that the Tennessee Consumer Protection Act does not apply to Appellants, who were engaged in the practice of law in the preparation of the closing documents.  Accordingly, we reverse the trial court's award of attorney fees and costs pursuant to the Tennessee Consumer Protection Act.  The trial court's order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part,  Reversed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and JOHN W. MCCLARTY, JJ., joined.

Conrad Mark Troutman, Knoxville, Tennessee, pro se.[1]

Ronald L. Grimm and M. Patrick O'Neal, Knoxville, Tennessee, for the appellees, Jerry Faerber, and Margaret Faerber.

---

[1] Troutman & Troutman, P.C. is an appellant, but has not filed a separate appellate brief.

# OPINION

## I. Background

On May 26, 2016, Jerry and Margaret Faerber (together, the "Faerbers," or "Appellees") entered into an agreement, "The Willows at Mountain Lake Marina PUD Sale Agreement" ("Purchase Agreement") for the sale of real estate in a planned unit development. The seller was Thor Industries ("Thor"), which is owned by Wilrite Company. The purchase price for the property was $75,000. On August 20, 2010, the Faerbers and Thor entered into a Settlement Statement, with Troutman & Troutman ("Troutman") listed as the Settlement Agent. The Settlement Statement was signed by Troutman attorney Conrad Mark Troutman (together with Troutman, "Appellants"). The Settlement Statement referenced a $387.50 charge for title insurance and a $30,000 loan payoff to Tennessee State Bank. On August 20, 2010, the Faerbers tendered a $71,083 cashier's check to Troutman (they had previously paid a $5,000 deposit). Troutman deposited the check into its trust account. Thereafter, Mark Troutman prepared a Warranty Deed, which was signed on August 20, 2010. The Warranty Deed reflected that the property was unencumbered.

Although the Settlement Statement provided for title insurance, Troutman never provided the insurance; instead, Mark Troutman relied on the statements of Thor and Tennessee State Bank employees, who allegedly advised that title insurance was not necessary. Tennessee State Bank held a lien/mortgage on the property at the time of closing. Troutman issued a $30,000 check to Tennessee State Bank to receive a release of the lien. Teresa Montgomery, a Tennessee State Bank employee, allegedly informed Mr. Troutman that the bank would accept the $30,000 for a "partial" release, but the bank ultimately rejected the payoff. Without obtaining a release from Tennessee State Bank, on September 21, 2010, Troutman issued a $30,000 check to Wilrite. Mr. Troutman testified that he received a document from Mr. Steve Williams, one of Thor's owners, indicating that Tennessee State Bank would release the lien, or that another entity would arrange a "rural development loan" and remove Tennessee State Bank's lien via an "approval letter". When Mr. Troutman discovered that the property was still encumbered, he contacted Mr. Williams, who allegedly informed Mr. Troutman that a refinance plan was in place. Although Mr. Troutman suggested that Thor return the purchase price to the Faerbers, Mr. Williams rejected the suggestion. Mr. Troutman did not inform the Faerbers of these issues. None of the arrangements, which Mr. Williams described, happened, and the property went into foreclosure.

On July 17, 2013, the Faerbers filed suit against Appellants (the Faerbers named other defendants, who were settled prior to trial), alleging negligent misrepresentation, fraudulent misrepresentation, breach of contract, legal malpractice and violation of the Tennessee Consumer Protection Act. The case was tried on April 11, 2016. In its June 6,

2016 order, the trial court found that Appellants had committed negligent misrepresentation by providing erroneous information indicating that Troutman had obtained title insurance and that the $30,000 payment represented the first mortgage payoff. The trial court also found Appellants liable under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104(b)(12) (finding that Appellants had represented the transaction to include title insurance and to pay off the first mortgage, thus deceiving Appellees). The trial court denied Appellees' fraudulent misrepresentation claim (finding no fraud in the misrepresentations), breach of contract claim (finding that the Faerbers were not in privity of contract with Appellants on the Warranty Deed), and the legal malpractice claim (finding that Troutman had no knowledge of title problems at the time of closing).[2] The trial court awarded Appellees: (1) the $75,000 purchase price; (2) $1,083 in closing costs; (3) $67,620.25 in attorney's fees (under § 47-18-109 of the TCPA); and (4) prejudgment interest.

## II. Issues

Appellants appeal. They raise three issues for review as stated in their brief:

1. The trial court erred in finding that the Tennessee Consumer Protection Act was applicable and in finding Appellants liable thereunder.
2. The trial court erred in holding the Appellants liable for negligent misrepresentation.
3. The trial court erred in its calculation and award of damages.

## III. Standard of Review

Because this case was tried by the court sitting without a jury, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates against those findings. *McGarity v. Jerrolds*, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013); *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, the weight of the evidence must "demonstrate... that a finding of fact other than the one found by the trial court is more probably true." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court conducts a de novo review of the trial court's resolutions of question of law, with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

With respect to the issue of whether Appellants are liable under the TCPA, the role of this Court is to "give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d

---

[2] The parties have not appealed the denial of these claims.

923, 926 (Tenn. 1995). When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." ***Eastman Chemical Co. v. Johnson***, 151 S.W.3d 503, 507 (Tenn. 2004). "[W]e presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by doing so." ***Lind v. Beaman Dodge***, 356 S.W.3d 889, 895 (Tenn. 2011). "When a statute is clear, we apply the plain meaning without complicating the task." ***Id***. "Our obligation is simply to enforce the written language." ***Id***.

## IV. Analysis

### A. Applicability of the Tennessee Consumer Protection Act

Appellees alleged a violation of the TCPA based on Appellants' failure to issue title insurance, failure to inform them of the rejected payoff, and remittance of the $30,000 payoff to Wilrite. Appellants maintained that the allegedly wrongful conduct constituted the practice of law, thus rendering the TCPA inapplicable. Concerning applicability of the TCPA, this Court explained:

> The Tennessee Consumer Protection Act, Tennessee Code Annotated Sections 47-18-101, *et seq*. ("TCPA"), prohibits, among other things, "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). A "deceptive" act or practice is "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as a matter of fact." ***Tucker v. Sierra Builders***, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) (citations omitted). An act or practice may be deemed unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." ***Id.*** at 116-17 (citing 15 U.S.C. § 45(n)). Because the TCPA is remedial, courts have determined that it should be construed liberally in order to protect the consumer. ***Id***. at 115. In order to recover under the TCPA, a plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act; and (2) that the defendant's conduct caused an "ascertainable loss of money or property...." ***Id***. (quoting Tenn .Code Ann. § 47-18-109(a)(1)); *see also* ***Cloud Nine, L.L.C. v. Whaley***, 650 F.Supp.2d 789, 798 (E.D. Tenn.2009) ("plaintiffs asserting claims under the [TCPA] are required to show that the defendant's wrongful conduct proximately caused their injury). . . .
>
> Whether a particular representation or act is "unfair" or "deceptive," within the meaning of the TCPA, is a question of fact, ***Id***. at 116 (citation omitted), which we review de novo upon the record with a presumption of

- 4 -

correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

*Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 809-10 (Tenn. Ct. App. 2012).

The TCPA does, however, contain certain limitations. *Id*. For one thing, it only applies to "acts 'affecting the conduct of any trade or commerce,'" including acts that are "a part of 'the advertising, offering for sale, lease or rental, or distribution of any goods, services or property....'" *Crossley Constr. Corp. v. Nat'l Fire Ins. Co. of Hartford*, 237 S.W.3d 652, 657 (Tenn.Ct.App.2007) (quoting Tenn. Code Ann. §§ 47-18-104(a), 47-18-103(11)). For another thing, it does not apply "[w]hen professionals like lawyers and doctors practice their professions outside their roles as businessmen or entrepreneurs" because they are "not engag[ed] in trade or commerce" within the meaning of the Act. *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 608 (W.D. Tenn.2011). In the instant case, the applicability of the TCPA rests on a determination of whether Appellants were "practicing law" when they failed to issue title insurance, failed to inform the Appellees of the rejected payoff, and remitted the $30,000 to Wilrite. In its June 6, 2016 order, the trial court found that Appellants'

> Conduct—failing to issue a title insurance policy, failing to inform [Appellees] of the rejected payoff and remitting [same] to [Wilrite]—does not constitute the practice of law to implicate the professional services TCPA exemption. The complained of conduct does not involve advocacy, litigation, or the like, but instead concerns an "entrepreneurial or business aspect of [the] professional's practice[.]" *Wright*, 782 F.Supp.2d at 608; *see generally* **Pagliari** [*v. Johnston Barton Proctor and Rose, LLP*,] 708 F.3d 813 [(6th Cir. 2013)] (negotiating a settlement to resolve a legal claim is practice of law); *Wright*, 782 F.Supp.2d 593 (sending a post-filing demand letter in connection with pending court proceedings is practice of law); *Ticor Title Ins. Co. v. Smith*, 794 S.W.2d 734, 737 (Tenn. Ct. App. 1990) (citation omitted) ("It is not necessary to be a lawyer in order to ascertain or review the status of the title to real property for the purpose of issuing a title insurance policy.").

***

> The TCPA declares unlawful as an unfair or deceptive practice, among other things: "(12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law. Tennessee Code Annotated section 47-18-104(b)(12). The Settlement Statement prepared by [Appellants] erroneously, and in violation of section 47-18-104(b)(12), represented the transaction included the purchase of title insurance and remedied the first

- 5 -

mortgage through a $30,000 payoff. These deceptive and/or unfair acts misled [Appellees] subjecting [Appellants] to liability for violation of the TCPA, section 47-18-104(b)(12).

(Footnotes omitted).

Tennessee Code Annotated Section 23-3-101 defines "law business" and the "practice of law" as follows:

(1) "Law business" means the advising or counseling for valuable consideration of any person as to any secular law, the drawing or the procuring of or assisting in the drawing for valuable consideration of any paper, document or instrument affecting or relating to secular rights, the doing of any act for valuable consideration in a representative capacity, obtaining or tending to secure for any person any property or property rights whatsoever, or the soliciting of clients directly or indirectly to provide such services;

(2) "Person" means a natural person, individual, governmental agency, partnership, corporation, trust, estate, incorporated or unincorporated association, and any other legal or commercial entity however organized; and

(3) "Practice of law" means the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies, or the soliciting of clients directly or indirectly to provide such services.[3]

In *Old Hickory Eng'g & Mach. Co.*, 937 S.W.2d 782 (Tenn. 1996), the Tennessee Supreme Court held that "[t]he preparation and filing of a complaint requires the

---

[3] The Supreme Court of Tennessee "possesses the sole and exclusive authority to regulate the practice of law and define the unauthorized practice of law." *Tenn. Envtl. Council, Inc. v. Tenn. Water Quality Control Bd.*, 254 S.W.3d 396, 403 (Tenn.Ct.App.2007) (citing *Petition of Burson*, 909 S.W.2d 768, 773 (Tenn.1995)). Accordingly, the Supreme Court is not bound by the General Assembly's definition of the "practice of law" in Tenn. Code Ann. § 23-3-101. However, the Supreme Court has essentially adopted this definition with the caveat that the acts enumerated in it constitute the practice of law only if they require the professional judgment of a lawyer. *See Petition of Burson*, 909 S.W.2d at 776-77; *see also* Tenn. Op. Att'y Gen. No. 94–101 (Sept. 9, 1994).

- 6 -

professional judgment of a lawyer, and is, therefore, the practice of law." ***Old Hickory Eng'g & Mach. Co.***, 937 S.W.2d at 786. Following that lead, this Court subsequently determined that "the drafting of pleadings and legal documents or the selection and completion of form documents constitutes the practice of law." ***Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow***, No. M1996-00020-COA-R3-CV, 1999 WL 1128847, at \*4 (Tenn. Ct. App. Dec.10, 1999) (holding that "more than mere clerical work ... [and] not simply reducing [the] clients' words to writing or filling in blanks on preprinted forms at the specific direction of [the] clients" constitutes the unauthorized practice of law). In making its determination, the ***Glasgow*** Court acknowledged that

> the definition of "[l]aw business" in Tenn. Code Ann. § 23-3-101(1) . . . includes "the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights...." Likewise, the definition of "[p]ractice of law" in Tenn. Code Ann. § 23-3-101(2) includes "the drawing of papers, pleadings or documents ... in connection with proceedings pending or prospective before any court...." Both of these statutory definitions must be read in conjunction with Tenn. S. Ct. R. 8, EC 3-5.5.[4] Thus, the acts included in Tenn. Code Ann. § 23-3-101 constitute the unauthorized practice of law if performed by a non-lawyer only when performing those acts requires the professional judgment of a lawyer. *See **In re Petition of Burson***, 909 S.W.2d at 776.

***Glasgow***, 1999 WL 1128847, at \*3. The ***Glasgow*** Court further noted that "with its

---

[4] As set out in footnote 5 to the ***Glasgow*** opinion:

Tenn. S. Ct. R. 8, EC 3-5 provides:

> It is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law. Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is the lawyer's educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. Where this professional judgment is not involved, non-lawyers, such as court clerks, police officers, abstracters, and many governmental employees, may engage in occupations that require a special knowledge of law in certain areas. But the services of a lawyer are essential in the public interest whenever the exercise of professional legal judgment is required.

decision in ***Old Hickory Eng'g & Mach. Co. v. Henry***, the [Tennessee Supreme] Court has aligned Tennessee with the majority of jurisdictions holding that the drafting of pleadings and legal documents or the selection and completion of form documents constitutes the practice of law." ***Glasgow***, 1999 WL 1128847, at *4; *accord* ***Ostrovsky v. Monroe (In re Ellingson)***, 230 B.R. 426, 433 (Bankr. D. Mont.1999) (holding that it is the majority view that the preparation of legal documents, even with pre-printed forms, generally involves more than "mere scrivener's duties" and thus, is construed as the practice of law.). In the more recent case of ***Credential Leasing Corp. of Tennessee, Inc. v. White***, No. E2015-01129-COA-R3-CV, 2016 WL 2937094 (Tenn. Ct. App. May 17, 2016), this Court acknowledged that

> Tennessee precedent regarding this issue [i.e., what constitutes the practice of law] provides that the practice of law "relates to the rendition of services for others that call for the professional judgment of a lawyer," such that "the drafting of pleadings and legal documents or the selection and completion of form documents constitutes the practice of law." *See* ***Flanary v. Carl Gregory Dodge of Johnson City, LLC***, No. E2007-01433-COA-R3-CV, 2008 WL 2434196 at *4 (Tenn. Ct. App. June 17, 2008) (quoting ***Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow***, No. M1996-00020-COA-R3-CV, 1999 WL 1128847 at *4 (Tenn. Ct. App. Dec. 10, 1999)). *See also* ***Spiegel v. Thomas, Mann & Smith, P.C***., No. C/A 895, 1989 WL 128294 at *1 (Tenn. Ct. App. Oct. 30, 1989) (determining the drafting of deeds of trust to be one of many aspects of the practice of law), rev'd on other grounds by ***Spiegel***, 811 S.W.2d 528 (Tenn.1991).

***Credential Leasing***, 2016 WL 2937094, at *8.

Turning to the record, portions of Mr. Troutman's discovery deposition were read into the transcript of the evidence. In relevant part, Mr. Troutman stated that, "I prepared the deed, and "I probably prepared the closing statement." Although he did not specifically concede that he drafted the Settlement Statement, Mr. Troutman testified that he reviewed the document. The Settlement Statement was admitted as Trial Exhibit 6; it is signed by Mr. Troutman on behalf of Troutman. Errors in the Settlement Statement and Warranty Deed form the basis for the Appellees' lawsuit. We will discuss these errors below; however, as to the applicability of the TCPA, the question is whether Appellants were engaged in the practice of law in preparing and reviewing these documents.

The instant appeal is analogous to the ***Credential Leasing***. In that case, Patrick White, a practicing attorney, drafted a deed of trust, in which he improperly listed the grantors and incorporated a deed description different from the description set out in earlier deeds. ***Credential Leasing***, 2016 WL 2937094, at *5. The trial court concluded that these errors precluded appellee Credential Leasing from receiving notice of

foreclosure on the property. In addition to drafting the deed of trust, Mr. White also agreed to perform "title work," which he explained would include a title search and the issuance of title insurance. He never performed a title search before preparing the deed, and no title insurance was issued. *Id*. This Court upheld the trial court's determination that Mr. White was engaged in the practice of law so as to preclude liability under the TCPA. In so holding we explained that

> [t]he fact that Patrick White may not have performed the task of drafting the 2010 Deed of Trust properly or carefully does not mean that he was not engaged in the practice of law when he did so. Credential alleged that Patrick White's drafting of the 2010 Deed of Trust fell below the accepted standard of care for title attorneys. The trial court agreed, determining that Patrick White was liable for professional negligence. Ergo, he cannot also be found to have violated the TCPA based upon the same allegations.

*Id*. at *8. The same is true here. Mr. Troutman, by his own testimony, prepared a warranty deed that contained an erroneous statement that the property was "free from all encumbrances . . . ." He also reviewed and signed a Settlement Statement, indicating that Appellants would provide title insurance, which was never forthcoming. Under the foregoing authority, we conclude that Appellants were engaged in the practice of law in preparing the erroneous documents used at Appellees' closing. Accordingly, the TCPA does not apply to Appellants' conduct in this case. We, therefore, reverse the trial court's order to the extent that it finds Appellants liable under the TCPA.

### B. Negligent Misrepresentation

Appellants argue that the trial court erred in charging them with negligent misrepresentation. To succeed in a cause of action for negligent misrepresentation:

> [T]he plaintiff must establish by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information.

*Morrison v. Allen*, 338 S.W.3d 417, 437 (Tenn. 2011). Negligent misrepresentation occurs when a defendant, acting in the course of his or her business, profession, or employment, or in a transaction in which she has a pecuniary interest, supplies faulty information meant to guide another in his or her business transaction; the defendant fails to exercise reasonable care in obtaining or communicating information; and the plaintiff justifiably relies upon the information provided by the defendant. *Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997) (citing Restatement (Second) of Torts, § 552). Specifically, the

Restatement (Second) of Torts § 552 provides that:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"Justifiable reliance in [the] context [of negligent misrepresentation] is not blind faith." *McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005). Rather,

> [t]he defendant is liable only to those, whether in contractual privity or not, for whose benefit and guidance the information is supplied. The information may be either direct or indirect. In that regard, the foreseeability of use is critical to liability.
>     Because the misinformation is negligently rather than intentionally supplied, courts have been careful to limit liability to only those whose use of the information is reasonably foreseeable:
>
> > By limiting the liability for negligence of a supplier of information to be used in commercial transactions to cases in which he manifests an intent to supply the information for the sort of use in which the plaintiff's loss occurs, the law promotes the important social policy of encouraging the flow of commercial information upon which the operation of the economy rests.

*John Martin Co., Inc. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991) (quoting Restatement (Second) of Torts § 552).

In its June 6, 2016 order, the trial court made the following, relevant findings concerning Appellants' negligent misrepresentation:

3. Here, "Troutman & Troutman, P.C.[,]" in the course of business, prepared a Settlement Statement which was signed by Mark Troutman "Troutman & Troutman, P.C. Settlement Agent[.]"
4. The Settlement Statement listed a $387.50 charge for title insurance (line 1108). However, [Appellants] never provided title insurance through any company to the Faerbers.
5. The Settlement Statement also included a $30,000 "[p]ayoff of first Mortgage to Tennessee State Bank." However, Mr. Troutman did not verify the payoff amount. The payoff was rejected and rather than advising the Faerbers of rejection and returning the entire purchase price, Mark Troutman issued a $30,000 check . . . without obtaining a release from Tennessee State Bank.
6. In the course of business, [Appellants] negligently provided erroneous information indicating title insurance had been purchased and $30,000 represented the first mortgage payoff. The false information was given for [Appellees'] guidance in the course of the real estate transaction and [Appellees] justifiably and foreseeably relied upon such in purchasing the ultimately-foreclosed-upon property. Accordingly, this Court finds [Appellants] liable for negligent misrepresentation.

Appellants first assert that Mr. Troutman cannot be held personally liable for negligent misrepresentation because Mr. Troutman "did not personally prepare title insurance commitments or policies [as the] staff of Troutman & Troutman, PC prepared [these] documents." Tennessee Code Annotated Section 48-101-621(a) provides:

Each individual who renders professional services as an employee of a domestic or foreign professional corporation is liable for such individual's own negligent or wrongful acts or omissions to the same extent as if that individual rendered the services as a sole practitioner. An employee of a domestic or foreign professional corporation is not liable, however, for the conduct of other employees of the corporation unless that employee is also at fault.

As noted above, the allegations of negligent misrepresentation arise from errors in both the Warranty Deed and the Settlement Agreement. Mr. Troutman testified that he prepared the Warranty Deed, which contained a provision indicating that the property was unencumbered. Under Tennessee Code Annotated Section 48-101-621(a), Mr. Troutman would be individually liable for damages arising from Appellees' reliance on the incorrect statement in the Warranty Deed. As to the Settlement Agreement, which included a line-item for title insurance, which was never procured, and a line-item

indicating that $30,000 would be tendered to payoff the first mortgage, Mr. Troutman testified that he reviewed this document, which he also signed. Based on the plain language of the statute, Mr. Troutman's work on this document could also form the basis for Appellees' negligent misrepresentation claim against him so long as Appellees have met their burden of proof as to the prima facie elements of the tort. We now turn to address that question.

Although, in relation to their TCPA issue, *supra*, Appellants argue that they were engaged in the practice of law so as to render the TCPA inapplicable, concerning the prima facie element for fraudulent misrepresentation, i.e., that the information must have been supplied "in the course of [the defendant's] business, profession or employment," Appellants would now have this Court conclude that they were not practicing law. Respectfully, Appellants cannot have their proverbial cake and eat it too. Having determined above that Appellants were, in fact, practicing law in relation to the preparation of the closing documents, we conclude that the "in the course of business, profession or employment" criterion for the negligent misrepresentation claim is met in this case.

Concerning the remaining prima facie elements, the trial court's findings, *supra*, are largely undisputed in the record. As briefly discussed above, the Warranty Deed and Settlement Statement contained significant errors. The Warranty Deed erroneously stated that there were no encumbrance on the property. Mr. Troutman prepared the deed without ensuring that Tennessee State Bank had released its lien. In fact, Mr. Troutman knew that Tennessee State Bank had rejected the $30,000 payment as a payoff of the loan secured by the lien. Rather than informing the Faerbers immediately, Appellants issued another $30,000 check to Wilrite, but still did not ensure release of the encumbrance on the subject property. Mr. Faerber testified that he relied on the deed as proof that he and his wife were seized of the fee simple in the property. Believing that they owned the property, without encumbrances, the Faerbers proceeded to pay the taxes on the property and then attempted to sell the land. It was at this point that they discovered that the Tennessee State Bank lien was still in effect and that the property was in foreclosure. The Warranty Deed error was compounded by the line-item in the prepared Settlement Statement, indicating that the $30,000 check was the payoff of the first lien. Furthermore, as discussed above, the Settlement Statement indicated that Appellants would procure title insurance, which was never done. From our review of the record, we conclude that the evidence does not preponderate against the trial court's findings of fact and that these facts satisfy the prima facie requirements for Appellees' negligent misrepresentation claim. Therefore, we affirm the trial court's finding that Appellants committed negligent misrepresentation.

## C. Damages

The trial court awarded Appellees $67,620.25 in attorney fees and costs. The sole basis for the trial court's award was Tennessee Code Annotated Section 47-18-109(e) of the TCPA, which provides, in relevant part, that: "Upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs." Having determined that Appellants are not liable under the TCPA, we also conclude that the award of attorney's fees and costs, pursuant to the TCPA provision, was also erroneous. Accordingly, we reverse the trial court's award of $67,620.25 in attorney fees and costs.

Concerning the trial court's award of the $75,000 purchase price, $1,083 in closing costs, and prejudgment interest, Appellants contend that the trial court applied an incorrect legal standard in arriving at these amounts. Specifically, Appellants point to a footnote in the trial court's order, which states that

> "[T]he usual measure of damages in a negligent misrepresentation action is the benefit of the bargain rule, that is, the difference between the actual value of the property received at the time of the making of the contract as compared to the value if the representations had been true." *Cary v. Evans*, 1986 WL 6642, at *3 (Tenn. Ct. App. June 12, 2986) (citations omitted).

In the first instance, the Appellants did not provide any proof concerning the "difference between the actual value of the property . . . compared to the value if the representations had been true." The Faerbers bargained for an unencumbered fee simple in the land and for title insurance to protect against financial loss from defects in their title, neither of which they received. Because the Faerbers were denied the benefit of their bargain, i.e. ownership in the land and title insurance, a reasonable measure of damages, in the absence of any countervailing proof, would be to put them in the same position they would have been in had they never entered into the contract for purchase of the property. This is what the trial court did by awarding them the purchase price, closing costs, and prejudgment interest. In view of the particular facts presented in this case, we cannot conclude that the measure and award of damages (other than attorney fees) was error.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order to the extent that it finds Appellants liable under the Tennessee Consumer Protection Act. We also reverse the trial court's award of $67,620.25 in attorney fees and costs. The trial court's order is otherwise affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to the Appellants, Conrad Mark Troutman, Troutman & Troutman, PC, and their surety,

and one-half to the Appellees, Jerry Faerber and Margaret Faerber, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE